# The Mayor and City Council of Baltimore, vs. William Lefferman.—*December* 1846.

By the act of 1821, chap. 252, for the more perfect security of the basin and harbor of *Baltimore*, the corporation of that city were empowered, whenever it might deem the same necessary, to compel individuals, companies, or bodies politic, owning property binding on *Jones Falls*, within the limits of the city, to wall up the same, on the refusal or neglect of any proprietor thereof to make such wall, after three months' notice from the commissioners of the city, which they were authorized to give : Held, by the county court, and affirmed by a division of this court, that the act, in question, was unconstitutional and void.

The corporation of the city of *Baltimore*, under the act of 1821, chap 252, and its ordinances, passed to carry said act into execution, notified the plaintiff to build a wall adjoining his property on *Jones Falls;* and that upon his failure to commence the same before a given day, they would erect the same at his cost. The plaintiff built the wall at his own cost, and then brought his action of *assumpsit* against the city, to recover the amount of his expenditure. *Held:* that although the act of 1821 was void, still, the payments made by the plaintiff were *voluntary;* made with a full knowledge of all the facts and circumstances of the case; in ignorance, only, of his legal rights; without fraud, imposition, or any undue advantage taken of the plaintiff: and therefore, the amount paid could not be recovered back.

Where money is voluntarily and fairly paid, with a full knowledge of the facts and circumstances under which it is demanded, it cannot be recovered back, upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party.

A payment is not to be regarded as compulsory, unless made to emancipate the person or property, from an actual and existing duress imposed upon it, by the party to whom the money is paid.

A payment made under an apprehension, or even menace, of an impending distress warrant, would not render it compulsory.

Appeal from *Baltimore* county court.

This was an action of *assumpsit*, brought to May term 1844, by the appellee against the appellant; to recover a sum paid, laid out and expended by him, to and for the defendant, &c. The defendants pleaded *non assumpsit*, and the verdict was for the plaintiff.

At the trial of the cause, the plaintiff offered in evidence the following account, to wit : - -

Mayor, &c., of Baltimore *vs.* Lefferman.—1846.

| | | |
|---|---|---:|
| For laying 176 perch, 18 ft., *a* 62½ per perch, | . | $110.45 |
| " Measuring, | . . . . . . . . | 2.50 |
| " 126¼ perch, *a* 75 per perch, | . . . . . | 94.68 |
| " 222 perch, 19 ft., *a* 62½ per perch, | . | 139.23 |
| " Measuring, | . . . . . . . . . | 3.25 |
| " Propping, | . . . . . . . . . | 2.00 |
| " 525 perches, and 18½ ft. of stone, at $1.50 per perch | . . . . . . . . . | 788.62 |
| | | $1140.73 |

Which was admitted to be correct by the defendants, as an account of money paid for the construction of a wall on *Jones Falls*, as mentioned in said account, and paid by said plaintiff.

The plaintiff further offered in evidence the act of 1821, chap. 252, and several ordinances of the city of *Baltimore:* to be read, by consent, from the city ordinances.

The plaintiff further offered in evidence the following notices of the board of city commissioners, to wit :—

"Extract of an ordinance, for the improvement of *Jones Falls;* approved the 1st August 1837.

"SECTION 3RD. And be it enacted and ordained, that the city commissioners be, and they are hereby authorised and directed, by and with the approbation of the mayor, to notify the owners of property binding on *Jones Falls*, to have the same walled, agreeably to the lines established, as aforesaid; with a good and sufficient wall of stone, to the height of thirteen feet, from the *Water Company's* canal to *Gay* street; diminishing in height to ten feet, six inches, at *Baltimore* street; and to nine feet, at *Pratt* street: the said height to be measured from a point nine feet below mean-tide, at these parts of the *Falls*, to which the tide flows; and from the bed of the stream, at those parts which are above tide-water; and to have the same backed up, or filled with earth, so as to secure the banks of the *Falls* from being broken by the pressure of the water: *and if any person, or body politic, shall refuse or neglect to have the same done within three months after receiving notice from the said board of commissioners,* it shall

then be lawful for the said commissioners to contract, in the usual manner, with such persons as may be willing to contract to build the said wall, whenever it has not been built by the proprietors on the *Falls*, and to make out their warrants for the collection of the expenses thereof, from the owner or owners of the said property, in the usual way ; and deliver such warrants to the city collector, who shall collect the proportions of the same from the several persons chargeable therewith, in the same manner as paving taxes are now collected."

"City Commissioners' Office.

"*Baltimore*, 14*th May*, 1838.

"You are hereby notified, to erect a good and sufficient stone wall on the line of *Jones Falls*, in the rear of your property; and to have the same backed up, or filled in with earth, agreeably to the provisions of the above mentioned ordinance.

"By order, R. B. Varden, Clerk.

"To *Mr. William Lefferman.*"

"City Commissioner's Office.

"*Baltimore, June* 19*th*, 1839.

You are hereby notified, to have erected on your property, along the line thereof, binding on the east side of *Jones Falls*, between *Centre* and *Bath* streets, a good and sufficient wall of stone, to the height of thirteen feet from the bed of the *Falls;* and have the same backed up, or filled with earth, so as to secure the banks of the *Falls* from being broken by the pressure of the water; and to have the said wall commenced, on or before the 19th July 1839, agreeably to the provisions of the several ordinances of the *Mayor and City Council of Baltimore*, relating to the improvement of *Jones Falls*, now in force; otherwise, the city commissioners will have the same done, and charged to your account, as directed by one of said ordinances.

"By order of the board of city commissioners,

"James G. Barnes, Clerk.

"To *William Lefferman.*"

Whereupon the plaintiff prayed the court to instruct the jury, as follows :—

1st. That the *first* section of the act, passed at December session, 1821, chap. 252, conferred no authority upon the defendants, to compel any persons owning property binding on *Jones Falls*, to wall up such property, so far as the said property may bind on the said *Falls: because said section proposes to carry out an improvement, for the general benefit of the city of Baltimore;* and is, therefore, unconstitutional.

2nd. That if they shall find from the evidence, that the plaintiff, being an owner of property binding on *Jones Falls*, expended any money in walling up said property, in consequence of the notices given in evidence, and in obedience to the ordinances under which such notices were given, and under the compulsion of such ordinances, that then the plaintiff is entitled to recover from the defendants, the amount of money so expended by him.

Whereupon the defendants pray the court to instruct the jury, as follows:—

1st. That the act of Assembly, 1821, chap. 252, conferred on the city of *Baltimore*, the power to compel the walling of property, situate as that of the plaintiff's, on *Jones Falls;* and whatever expenses were incurred by the plaintiff in erecting, or causing to be erected, the said wall, under the ordinances of the city of *Baltimore*, passed in pursuance of the authority conferred by said act on the corporation, cannot be recovered by the plaintiff in this action.

2nd. That if the jury shall believe from the evidence, that the plaintiff did contract with certain persons to build said wall on *Jones Falls*, and did pay the amount of the bill offered in evidence, by said plaintiff, as the expense thereof; nevertheless the payment was, under the circumstances, a voluntary payment, and the money cannot be recovered from the defendant, in this action. The court, (PURVIANCE, A. J.,) granted both of the prayers of the plaintiff, and refused the prayers of the defendants; the defendants excepted.

The judgment being against the city of *Baltimore*, she prosecuted this appeal.

The cause was argued before DORSEY, CHAMBERS, MAGRUDER and MARTIN, J.

By PRESSTMAN and NELSON, for the appellants; and
By DAVID STEWART, for the appellee.

MARTIN, J., delivered the opinion of this court.

It appears from the record in this case, that the legislature of *Maryland*, by the first section of an act passed on the 23rd of February 1822, provided :

"That for the more perfect security of the basin and harbor of the city of *Baltimore*, the corporation thereof shall have power, whenever it may deem the same necessary, to compel individuals, companies, or bodies politic, owning property binding on *Jones Falls*, within the limits of the city, to wall up such property, so far as the said property may bind on the falls, in such manner as the corporation may by ordinance direct."

The mayor and city council of *Baltimore*, in pursuance of the power granted by this act, by an ordinance of the 25th of July 1837, directed the city commissioners to notify the owners of property binding on *Jones Falls*, to have the same walled, as specified in the ordinance, which provides :—

"That if any person or body corporate, who shall refuse or neglect to have the same done within three months after receiving notice from the board of commissioners, it shall then be lawful for the said commissioners to contract, in the usual manner, with such persons as may be willing to contract to build the said wall, wherever it has not been built by the proprietors on the *Falls;* and to make out their warrants for the collection of the expenses thereof from the owner or owners of the said property, in the usual way, and to deliver such warrants to the city collector, who shall collect the proportions of the same from the several persons chargeable therewith, in the same manner as paving taxes are now collected."

On the 14th of May 1838, the appellee was notified to erect a stone wall on the line of *Jones Falls*, in the rear of his property, agreeably to the provisions of this ordinance. And on the 19th of June 1839, a notice was again served upon him, by which he was required to erect a stone wall upon his property, and to have the wall commenced on or before the

19th of November 1839, agreeably to the provisions of the several ordinances of the mayor and city council, relating to the improvement of *Jones Falls*, otherwise the city commissioners would have the same done, and charged to his account, as directed by one of the said ordinances.

It appears from the evidence in the cause, that the appellee, in compliance with these notices, erected upon his property, binding on *Jones Falls*, a stone wall, as required by the ordinance to which we have referred; and at the May term 1844, of *Baltimore* county court, instituted an action of *assumpsit* against the appellants, for the purpose of recovering from them the money thus expended.

In this condition of the case, the plaintiff below asked from the court the following instructions:

*First.* That the first section of the act passed at December session 1821, chap. 252, conferred no authority upon the defendants to compel any person owning property binding on *Jones Falls*, to wall up such property, so far as the said property may bind on the *Falls*, because said section proposes to carry out an improvement for the general benefit of the city, and is therefore unconstitutional. And

*Secondly.* That if the jury shall find from the evidence, that the plaintiff being an owner of property binding on *Jones Falls*, expended any money in walling up the said property, in consequence of the notices given in evidence, and in obedience to the ordinance under which such notices were given, and under the compulsion of such ordinance, that then the plaintiff is entitled to recover from the defendants the amount of money so expended by him.

Upon the question raised by the plaintiff's *first* prayer, that which respects the validity of the first section of the act of Assembly of 1821, chap. 252, this court is equally divided in opinion. The opinion of the county court pronouncing this statute to be unconstitutional and void, stands affirmed; and the requisition imposed upon the appellee, to construct a wall on his property binding on the *Falls*, by the ordinance to which we have adverted, must be regarded as unauthorised and illegal.

This presents for our examination, the proposition embodied in the plaintiff's *second* prayer :—That assuming that the expenditure in question, was made by the plaintiff in consequence of the notices exhibited in evidence, and in obedience to the ordinance under which such notices were given,—an ordinance passed in the exercise of a power, not lawfully delegated to the defendants;—that an expenditure made under such circumstances, is to be considered as compulsory in its character, and entitled the appellee to reclaim from the appellants, the money expended for their use and benefit.

It is now established, by an unbroken series of adjudications in the *English* and *American* courts, that where money is voluntarily and fairly paid, with a full knowledge of the facts and circumstances under which it is demanded, it cannot be recovered back in a court of law, upon the ground, that the payment was made under a misapprehension of the legal rights and obligations of the party.

In the case of *Brisbane against Dacres*, 5 *Taunt.*, 151, *Gibbs*, justice, when examining this subject, says :—

"We must take this payment to have been made under a demand of right, and I think, that where a man demands money of another, as a matter of right, and that other, with a full knowledge of the facts upon which the demand is founded, has paid a sum, he can never recover back the sum he has so voluntarily paid. It may be, that upon a further view he may form a different opinion of the law, and it may be, his subsequent opinion may be the correct one. If we were to hold otherwise, many inconveniences may arise; there are many doubtful questions of law : when they arise, the party has an option, either to litigate the question, or to submit to the demand, and pay the money. I think, that by submitting to the demand, he that pays the money, gives it to the person to whom he pays it, and makes it his, and closes the transaction between them."

The opinion and reasoning of *Gibbs*, justice, in this case, is cited, with approbation, in *Ellicott against Swartout*, 10 *Pet.*, 154, as containing a correct exposition of the law on this question; and the *Supreme Court* held :—

"That in case of a voluntary payment, by mere mistake of law, no action will lie to recover back the money. The construction of law is open to both parties, and each is presumed to know it." The same doctrine is announced in *Clarke against Dutcher*, 9 *Cow.*. 674, and *Mowatt vs. Wright*, 1 *Wend*, 355, and is too firmly settled to be questioned or disputed.

As it is evident, that the expenditure was made in this case by the plaintiff, with a full knowledge of all the facts accompanying the transaction, and in obedience to a demand, fairly, although illegally made, by the defendants; the mere circumstance, that he was at the time ignorant of his legal rights, does not authorise a reclamation of the money expended; and the counsel for the plaintiff has placed his right to recover, on the ground, that from the circumstances of the case, the jury were warranted in finding, that he had expended the money, not voluntarily, but under the compulsion of the defendants, in their exercise of an unauthorised power.

It is not pretended, that the defendants are justly chargeable with having procured this expenditure, through the instrumentality of fraud or imposition.

Or that the defendants took an undue advantage of the situation of the plaintiff, for the purpose of extorting from him the performance of this work.

As in *Pigot's* case, cited by *Lord Kenyon*, in *Cartwright vs. Rowley*, 2 *Esp.*, 723, where an action was brought to recover back money paid to a stewart of a manor, for producing at a trial some deeds and court rolls, and for which he had charged extravagantly. And the objection being taken, that the money had been voluntarily paid, it was held, that the money being paid through necessity, and the urgency of the case, was recoverable.

But the right to maintain this action, so far as this branch of the case is concerned, turns on the question, whether, assuming the facts asserted in the prayer to be true, the circumstances under which the expenditure was made, impressed upon it the character of a compulsory payment of money, as that term is legally understood and applied.

Upon this branch of the law, numerous cases are to be found, but it is proposed to refer only to a few of these, of unquestionable authority, and which are most analogous to the one under consideration.

In *Knobbs against Hall*, 1 *Esp. Rep.*, 84, a case frequently recognised, and in 1840, by *Lord Denman*, in *Skeate vs. Beale*, 11 *Adol. & El.*, 983, an action of assumpsit was instituted for the use and occupation of certain rooms in the *City Chambers*. One article of the set-off, which the defendant proposed to give in evidence, was as follows :—

" The defendant being indebted to plaintiff, for other *chambers*, which he then occupied. The plaintiff demanded payment, at the rent of twenty-five guineas per year. The defendant insisted that he had taken them at twenty guineas per year, only, and offered to pay at that rate. The plaintiff refused to take it, and threatened to distrain if not paid at the rate of twenty-five guineas; and the defendant, in order to avoid the distress, paid at that rate; and having proved that the *chambers* were really let at twenty guineas, proposed to set off the overplus, as paid by compulsion : But *Lord Kenyon* held, that this could not be deemed a payment by compulsion, as the defendant *might have, by a replevin*, defended himself against the distress; and that after a voluntary payment, so made, he should not be allowed to dispute its legality."

In the case of *Fullam against Down*, 6 *Esp.*, 26, *note*, *Lord Kenyon*, when considering this subject, announced :—

" That where a voluntary payment was made of an illegal demand, without an immediate and urgent necessity, or to redeem your person or your goods, it is not the subject of an action for money had and received. The law, if so held, would subject all accounts and settlements between parties, to revision." The opinion appears to be qualified by the remark: " the party knowing the demand to be illegal." But the character of the payment never depends, as we have seen, on the knowledge of the party, and if voluntary, it is binding, although made under the impression, that the demand was legal.

The same position is maintained, in *Shaw vs. Woodcock*, 7 *Bar. & Cres.*, 73, where it was adjudged: 'That a payment,

made in order to obtain possession of goods or property to which a party is entitled, and of which he cannot otherwise obtain possession at the time, is a compulsory, and not a voluntary payment, and may be recovered back.

And *Bayley*, justice, in discriminating between a voluntary and compulsory payment, says :—

" If a party has in his possession, goods or property belonging to another, and refuses to deliver such property to that other, unless the latter pays him a sum of money, which he has no right to receive, and the latter, in order to obtain possession of his property, pays that sum, the money so paid is a payment by compulsion, and may be recovered back."

In *Ashmole vs. Wainwright*, 2 *Adol. and El. N. S.*, 837, the money was paid for the purpose of delivering the goods of the plaintiff from the possession of the defendants, who detained them, as common carriers. The action to recover back the money paid for their deliverance, was sustained. *Coleridge*, justice, saying :—" That he never doubted, that an action for money had and received, might be maintained on a wrongful detainer of goods."

*Irving vs. Wilson*, 4 *Term.*, 486, was a case in which the property of the plaintiff was actually seized by a revenue officer, as forfeited, when in fact it was not liable to seizure, and money received from the owner to release it. It was a clear case of extortion and duress; and the payment made to obtain the goods, could not be considered as voluntary. *Ashurst*, justice, says :—"It was not a voluntary payment; for when the defendants had stopped the goods, the plaintiff was in their power."

In *Clinton vs. Strong*, *Johnson R.*, 369, the vessel of the plaintiff was seized as having violated the non-intercourse law, but was subsequently withdrawn, as the vessel was found to be innocent. But the marshal refused to re-deliver the vessel, unless the costs were paid. The costs were paid by the plaintiff, as the only means of obtaining a restoration of his property. The court considered the property in duress; and held that the payment of the costs was not voluntary, as they were exacted by the officer as a condition of the re-delivery of the vessel.

In the case of *Chase vs. Dwinal, 7 Greenl. Rep.*, 134, the money sought to be recovered back by the plaintiff, had been paid to liberate a raft of lumber, detained by the defendant, in order to exact an illegal toll; and it was determined, that money paid under such circumstances, was a payment under duress, and necessity, and therefore by compulsion. The court, alluding to the maxim, " *volenti, non fit injuria,*" say :—

" But this rule applies where the party has a freedom in the exercise of his will; and is under no such duress or necessity, as may give his payments the character of having been made upon compulsion." And again,

"If money is voluntarily paid to close a transaction, without duress, either of the person or goods, the legal maxim, *'volenti non fit injuria'* may be allowed to operate. But it would be a perversion of the maxim, to apply it for the benefit of a party, who had added extortion, to unjustifiable force and violence."

In the case of the *Boston & Sandwich Glass Co. vs. The City of Boston, 4 Metcf.*, 181, the tax was levied on the personal property of the plaintiffs, by the collector, for the collection of taxes, alleged to be due from him. With this levy placed upon their property, the plaintiffs paid the taxes, under a protest, that they were illegal, and were paid under duress, and not voluntarily. The taxes were assessed without authority, and plaintiffs recovered the amount in an action of assumpsit.

In this case the tax was actually levied on the property, and if the assessment had remained unpaid, a sale would have followed. The court in stating the ground on which a payment of this description is regarded as compulsory, refer to *Preston, vs. City of Boston, 12 Pick.,* 7, and say :—

" It arises from the power and authority placed in the hands of a collector of taxes, to levy directly upon the property or person of every individual, whose name is borne on the tax list, in default of payment of the taxes. To use the language of the court, in the case just referred to, such warrant is in the nature of an execution running against the property and person of the party, upon which he has no day in court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability."

The court refer to the cases of *Shaw vs. Woodcock*, 7 *Bar. and Cres.*, 73; *Astley vs. Reynolds*, 2 *Strange*, 916; and *Chase vs. Dwinal*, 7 *Greenl. R.*, 134, and it is evident from the whole tenor of the opinion, that they considered a payment compulsory, only when it was made for the purpose of liberating the person or property, from the duress of a party who has control of it.

We consider, therefore, the doctrine as established, that a payment is not to be regarded as compulsory, unless made to emancipate the person or property, from an actual and existing duress, imposed upon it by the party, to whom the money is paid. And that a payment made under the apprehension, or even menace of an impending distress warrant, would not render it a payment by compulsion. *Knobbs vs. Hall*, 1 *Esp. Rep.*, 84. *Colwell vs. Peden*, 3 *Watts*, 328.

Testing the case before us by this principle, it is manifest, that the expenditure made by the plaintiff has none of the characteristics, of a payment by compulsion: It is the clear case of an act performed by the plaintiff, in obedience to the demand of the defendants, conscientiously and honestly preferred; which the plaintiff regarded at the time as lawful and just, but in which, it appears from subsequent events, that he was mistaken. It is the plain case, of an expenditure voluntarily and freely made by the appellee, in the belief that he was performing his duty, but under a misapprehension of his legal responsibility.

It cannot be pretended, that any duress or force was applied to the property or person of the plaintiff, as a means of coercing the execution of this work, or that the money was expended to extricate his estate from the pressure of some process that could not be resisted.

The appellee was warned by the notice of the 19th of June 1839, that if the wall was not commenced within three months, the city commissioners would have it done, and charged to his account, as directed by one of the ordinances. That is, that the appellants would direct the wall to be constructed by others, and collect such expenses as might be incurred, by suit, or distress, in the manner in which paving taxes are

collected. But this is no duress or coercion; and all that can be urged in vindication of the position assumed by the appellee is, that the expenditure was made by him, under the apprehension, that if the wall was not erected, the improvement would be executed by the appellants, and the cost charged to his account, and recovered by suit, or warrant. A payment made under said circumstances, is in law, not regarded, as compulsory in its character. If a distress warrant had been laid by the collector of the appellants, on the property of the appellee, and he had made the expenditure for the purpose of liberating his property from the predicament in which it was thus placed, the aspect of the question would have been changed, and such a payment might be treated, as by compulsion. But there is no such feature in this case, and the court, erred, we think, in granting the plaintiff's second prayer.

It follows from the views thus expressed, that this court is divided in opinion, on the question raised by the defendant's first prayer: and that we think, the court below erred in rejecting their second prayer.

The judgment of the county court is therefore reversed without a *procedendo*.

JUDGMENT REVERSED.