## KNOX v. ABERCROMBIE.

1. The indorser of a bill prays a judgment against himself on his indorse-
ment, and takes from the holder an assignment of a separate judgment a-
gainst the acceptor; afterwards it is ascertained in a suit in chancery be-
tween the holder and the acceptor, that the latter is entitled to a credit on
the judgment against himself for $968 72, which decree is in full force :
to the extent to which the judgment against the acceptor is made unavail-
able by the acts or omissions of the holder, the latter is liable to the indor-
ser in an action for money had and received.

Writ of Error to the Circuit Court of Montgomery.

THE defendant in error declared against the plaintiff in *in-
debitatus assumpsit,* for money had and received, &c., and
the cause was tried by a jury, who returned a verdict in fa-
vor of the plaintiff below, for $1,490 52, damages, on which
judgment was rendered. From a bill of exceptions sealed at
the instance of the defendant, it appears that Knox & Co. as
the holders of a bill of exchange, in the fall of 1838, recov-
ered separate judgments against Riddle as acceptor, Walker
as drawer, and the plaintiff as indorser. On the 10th De-
cember, 1838, execution issued against the latter, which was
superseded by writ of error, and the judgment affirmed by
the supreme court, in the year 1839. An *alias fieri facias*
was issued against the plaintiff on the 22d October, 1839, the
execution of which was suspended by the order of Knox &
Co's attorney. On the 19th December, 1839, a *pluries fi. fa.*
issued against the plaintiff, which was levied on four slaves ;
in February, 1840, he filed his bill and enjoined the judg-
ment, alleging equities between the parties to the bill of ex-
change, and that Knox & Co. would not give him the con-
trol of their execution against the other defendants—that
payments had been made by Riddle—making all the parties
to the bill of exchange defendants to the bill, and praying
that proper credits should be made on the execution.

This bill was answered by Riddle, on the 10th March, 1840, alledging that he had paid, or was entitled to a credit of $2,256—of which sum he paid $886 06, in cash, including costs and sheriff's commissions; the residue $1,370 was the amount of a judgment obtained by Knox & Co. upon their garnishment to one Mitchell. Riddle however averred that he had received a credit on the execution for only $702 —makes his answer a cross bill against the other parties, prays an account of credits, and that an injunction may be awarded. An injunction was accordingly granted.

On the 26th May, 1840, the plaintiff in the present case answered the cross bill, and on the 22d June of the same year, the defendant answered, admitting that he had received $520, and no more; that his attorneys had informed him that they had collected $480, but did not know by whom it was paid.

In August, 1841, the injunctions were dissolved, and the bill of Abercrombie dismissed, but on motion of Riddle's solicitor leave was given to amend. Appeals were taken from these decrees, and affirmed in the supreme court. In June, 1842, Knox assigned to Abercrombie the judgment against Riddle for $5,323, as expressed in a written instrument, and in the following month references were ordered in both the cases of Abercrombie and Riddle, to ascertain what amount they had paid, and to what credits the latter was entitled in equity. In July, 1843, the register reported that Riddle had lost $968 72, by the neglect of the defendant to pursue the judgment recovered upon the garnishment against Mitchell, and that it should be allowed as a credit in his favor. This report was confirmed, and a decree rendered by which it was adjudged, that the judgment against Riddle should be credited with the sum last stated.

The court, after having refused to give several charges prayed by the defendant, charged the jury, that although Abercrombie may have been notified, or had a knowledge of the set off or defence by Riddle, yet if he paid his money upon an open or unsatisfied judgment, the payment was not voluntary, and he may recover it back to the extent of the set off, or defence, which the decree determined that Riddle was entitled to, against the judgment of Knox & Co.

J. A. ELMORE, for the plaintttff in error, insisted that Abercrombie had voluntarily paid the amount due upon the judgment of Knox & Co. against him, and could not therefore recover back a sum equal to that which had been allowed by the court of chancery as a credit upon the judgment against Riddle. If he was entitled to relief, he could not obtain it by the remedy he had adopted.

J. E. BELSER and S. F. RICE, for the defendant in error contended, that Abercrombie was entitled to an action against Riddle for his reimbursement. Knox by his neglect, had impaired that remedy, so that Riddle was not answerable to Abercrombie for a part of the sum he had paid, and to this extent he was entitled to charge Knox. The decree of the chancery court was unreversed, and of course conclusive against Knox. There could be no objection to the form of action that had been adopted.

COLLIER, C. J.—The action for money had and received, it may be laid down generally, lies for money which *ex æquo et bono*, the defendant ought to refund, as for money paid by mistake, or upon a consideration which fails; or for money obtained by imposition, extortion or oppression; or by taking an undue advantage of the plaintiff's situation. [3 Mass. Rep. 74; 1 Wend. R. 360; 6 Sergt. & R. Rep. 369; 2 Burr. Rep. 1012.] It may be maintained on a consideration which has failed, or on a contract rescinded, or not performed. [1 Esp. Rep. 150, 268; 4 Id. 221; 4 Taunt. Rep. 334; 2 W. Bla. Rep. 1078.[ Money paid on a judgment that is afterwards reversed, may be recovered back in this action, unless its retention by the defendant is consistent with equity and good conscience. [7 Ala. Rep. 484; 5 Stew. & P. Rep. 119; 1 Har. & Johns. Rep. 405; 6 Cow. Rep. 297; 13 Sergt. & R. Rep. 292; 10 Wend. Rep. 354.] So also for money paid on an execution issued on a satisfied judgment. [5 Cow. Rep. 488; 15 Wend. Rep. 321.]

In Brown v. Williams, 4 Wend. Rep. 360, it was held that assumpsit for money had and received will lie by an indorser of a note against the holder, to recover back money

paid under a judgment against such indorser, where the holder previous to the payment made an arrangement with a prior indorser, by which he discharges him, or enters into a covenant not to sue him. So, money collected under an execution issued on a judgment irregularly entered, may be recovered back in assumpsit. [Minor's Rep. 71.] Where a judgment was regularly recovered in an action for the rents and profits, &c. the judgment debtor was allowed to recover back in another action the money paid by him in satisfaction of the judgment—on the ground that it had been since ascertained, by the reversal of a judgment against another person, that the judgment creditor was not entitled to retain the rents and profits so recovered by him. [15 Mass. Rep. 207.] In Fowler v. Shearer, 7 Mass. Rep. 14, it was held, that where an attorney in whose hands a note was placed for collection, received part pay thereof after action commenced, but notwithstanding took judgment for the whole amount of the note on the default of the maker, the latter might recover of the attorney the money so paid, though the attorney had paid it over to the creditor. [See also, 3 H. & Johns. Rep. 218; 4 Id. 66.]

It is said that if a person with a full knowledge of the facts, voluntarily pays a demand unjustly made on him, though attempted to be enforced by legal proceedings, it will not be considered as paid by compulsion, and he cannot recover it back. [1 Esp. Rep. 279; 2 Id. 572; 5 Taunt. R. 147; 4 B. & C. Rep. 290.] If the party is obliged to pay in order to obtain possession of the thing to which he is entitled, the payment is not voluntary, but compulsive, and may be recovered back. [7 B. & C. Rep. 85.] Let this brief citation of authorities suffice to furnish principles and analogies to guide our determination in the case before us.

Here the plaintiff, as the indorser of a bill of which Riddle was the acceptor, pays off a judgment which the holders had recovered against him, and takes an assignment of a separate judgment recovered by them against Riddle. When these several transactions took place, the right of Riddle to a credit for the loss consequent upon the failure of Knox & Co. to enforce a collection of their judgment against Mitchell, the

garnishee, was not established. But this right was subsequently ascertained and settled by a decree in chancery. Under these circumstances, we think it clear that the plaintiff cannot be concluded by the payment he made to the defendant, upon the ground that it was voluntary. He did not only not pay his money until there was a judgment against him, but waited until an injunction as to that judgment had been dissolved. It was certainly competent for him to satisfy the judgment against himself, without awaiting the levy of an execution upon his property.

When the plaintiff paid the judgment against himself, on the bill, even without an assignment of the judgment against Riddle, he would have been remitted to his remedy against Riddle as the acceptor, and was entitled thus to reimburse himself. If the defendant impaired that remedy by having received a part of the money of Riddle, or discharged him from its payment by his acts or omissions, *pro tanto*, the plaintiff is entitled to recover back what he has paid the defendant. As to the form of action in which this right may be made available, we think it unquestionable that it is that which has been adopted in the present case.

The decree of the chancellor upon the report of the register is conclusive, (until reversed,) of the matters determined by it; at least as it respects the parties before us. It indicates the extent to which the plaintiff is barred of his remedy against Riddle, and thus admeasures the extent of the defendant's liability.

This view is decisive of the case; the judgment is consequently affirmed.