# TOWN COUNCIL OF CAHABA *vs.* BURNETT.

[ACTION TO RECOVER MONEY PAID FOR LICENSE UNDER ILLEGAL MUNICIPAL
ORDINANCE.]

1. *When action lies for money voluntarily paid under mistake.*—It is a settled principle of law in this State, that money voluntarily paid, through ignorance or mistake of law, with a full knowledge of all the facts, and without fraud or imposition, cannot be recovered by action.

2. *What constitutes voluntary payment.*—A payment of money to the clerk of the town council, as the price of a license for retailing spirituous liquors, under an ordinance afterwards declared void by the supreme court, cannot be considered to have been made upon compulsion, because the ordinance imposed a fine and imprisonment as the penalty for retailing without license; consequently, the money cannot be recovered by action.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by James T. Burnett, against the Town Council of Cahaba, to recover the sum of $1000, alleged to be "due by account on the 1st March, 1855, the same being money paid said defendant unlawfully for a license for the year 1855." A demurrer to the complaint was interposed, but overruled. "On the trial," as the bill of exceptions states, "the plaintiff proved by one Lodor, who was clerk, secretary and treasurer of the town council of Cahaba on the 19th February, 1855, that the plaintiff applied to him at his office, his usual place of business, for a license to retail spirituous liquors in the town of Cahaba, from that time until the 15th January next thereafter, under 'the thousand-dollar ordinance,' as it was termed, and proposed to pay, and did pay him, nine hundred and five dollars for said license, being at the rate of one thousand dollars a year; that plaintiff did retail in said town, under said ordinance, for the time specified; that said money was put into the treasury, with the other money of the corporation, and was expended for the use and benefit of the town of Cahaba, under the direction of the town council; and that there remained in

said treasury, at the end of that year, a balance of about one hundred and seventy-five dollars, which he (witness) paid over to his successor in said office." The plaintiff then read in evidence the clerk's receipt for the money, and three ordinances of the town of Cahaba; the latter being in these words: "1st. To retail for one year spirituous or vinous liquors within the corporate limits of said town, one thousand dollars." "Ordinance 3: Be it further ordained, by the authority aforesaid, that any person or persons, retailing spirituous liquors, keeping a billiard-table for public use, or keeping a nine or ten-pin alley, or alley with any other number of pins, without having first obtained a license therefor, shall be liable to a fine of fifty dollars; which fine may be assessed for every day spiritous liquors may be retailed, or such billiard-table or nine or ten-pin alley may be used." "Ordinance 5: Be it further ordained, that if any person, for any violation of a town ordinance, shall be fined in any sum, and shall refusé or be unable to pay the same, such person may be committed to the common jail of Dallas county, for such time as the council may direct, not exceeding three days." This being all the evidence offered by the plaintiff, the defendant demurred to it, and the plaintiff joined in the demurrer. The court overruled the demurrer, and rendered judgment for the plaintiff; to which the defendant excepted, and which is now assigned as error.

ALEX. WHITE, J. D. F. WILLIAMS, and N. R. H. DAWSON, for the appellant.—The money sought to be recovered was voluntarily paid by the plaintiff, without any exaction or compulsion on the part of the defendant, with full knowledge of all the facts, but under a mistake as to his legal obligation to pay. According to all the authorities, ancient and modern, English and American, an action does not lie to recover money paid under such circumstances.—Bilbie v. Lumley, 2 East, 469; Lowry v. Bourdieu, Doug. 467; Brisbane v. Dacres, 5 Taunton, 155; Skyring v. Greenwood, 4 Barn. & Cress. 281; Bramston v. Robins, 4 Bingham, 11; Wilson v. Ray, 10 Ad. & El. 82; Jones v. Watkins, 1 Stew. 81; Trustees of University

v. Keller, 1 Ala. 406; Yarborough v. Wise, 5 Ala. 294; Rutherford v. McIvor, 21 Ala. 750; Gwynn v. Hamilton, 29 Ala. 238; Elliott v. Swartwout, 10 Peters, 150; 4 Metcalf, 181; 7 Cushing, 125; 9 Cowen, 674; 7 Hill, 159; 4 Denio, 308; 4 Gill, 425; 5 Gill, 244; 2 Rich. 317; 27 Maine, 145; 1 Ohio St. 268; 10 Ohio, 257; 15 Ohio, 625; 4 Pick. 114, 533; 2 Leigh, 76; 8 Yerger, 498; 1 Wendell, 355; 2 N. H. 341; 8 Barr, 109; 20 Penn. St. 421.

CHILTON & GUNTER, JNO. T. MORGAN, and GEO. W. GAYLE, *contra.*—The plaintiff was compelled, under the circumstances disclosed by the evidence, either to pay the money which is the subject of controversy, or to discontinue his business, or to subject himself to arrest, fine and imprisonment as for a criminal offense. A payment of money under such circumstances can, in no just sense of the term, be termed voluntary. No principle of law, or public policy, forbids its recovery; while, to deny a recovery, would be contrary to common right and justice, would allow a party to take advantage of his own wrong, where his adversary is not *in pari delicto*, and would hold out an encouragement to corporations in the exercise of illegal powers.—Neville v. Wilkinson, 1 Bro. C. C. 543; St. John v. St. John, 11 Vesey, 536; 3 Monroe, 82; Yarborough v. Wise, 5 Ala. 293; 1 Story's Equity, § 121; Moses v. McFarlane, 1 Bla. 219; Bingham v. Bingham, 1 Vesey, 126; Lansdowne v. Lansdowne, Mosely, 364; Brisbane v. Dacres, 5 Taunton, 150; 27 Maine, 147; 9 Pick. 128.

A. J. WALKER, C. J.—It is the law of this State, that where money has been *voluntarily* paid, through mistake or ignorance of law, with a full knowledge of the facts, and without fraud or imposition, it can not be reclaimed, either at law or in equity. While we are aware that this proposition is too broad to harmonize with all the decisions, yet it is supported by the great preponderance of adjudged cases, both in England and America, and by what we conceive to be a sound policy, and has been too often recognized in our jurisprudence to be now denied.

For these reasons, and because the subject has been recently examined with care in this court, we decline to enter upon a discussion of the subject.—Gwynn & Wife v. Hamilton, 29 Ala. 233; Rutherford v. McIvor, 21 Ala. 756; Knox v. Abercrombie, 11 Ala. 997.

That the payment of the money sought to be regained by this suit was made with a full knowledge of all the facts, in the absence of fraud or imposition, and on account of a mistake or ignorance of law, is clear, and is not controverted. The proposition with which this opinion commences, therefore, leaves the plaintiff no ground for his demand, if the payment was voluntary; and the fate of the case hangs upon the single question, whether, in the eye of the law, the payment was voluntary or compulsory.

Without being thereto directly called or requested, the plaintiff went to the proper officer of the town council, and paid to him the sum required by the ordinance to procure license to retail liquor in the town for the remainder of the year. The money was accepted, the license issued, and the defendant accordingly retailed liquor within the town. The ordinance fixing the price of the license has since been declared void. Other ordinances prescribed a liability to a fine of fifty dollars for every day upon which any person might retail without license,-and to imprisonment, for a time not exceeding three days, if the fine was not paid. The payment of the price of the license was purely voluntary, unless the prospect of proceedings whereby he would be subjected to fine and imprisonment (if he failed to pay it) amounted to compulsion. There was no fraud, no confidential relation, no personal exaction. The ordinances do not appear to have been adopted otherwise than in the fullest confidence of their validity, and it is most probable that the plaintiff's proposal to pay the prescribed sum was under a conviction of legal duty. It does not affirmatively appear that the plaintiff was influenced by an apprehension of proceedings against him; but, if the presumption that he was can be indulged, it does not afford a sufficient predicate for the conclusion, that he acted under what the law deems compulsion.

That money has been paid under the apprehension of judicial proceedings, is no reason why there should be a reclamation.

If the influence of the mere apprehension of judicial proceedings is legal compulsion—if, when a party, having the alternative to pay or submit to a judicial investigation, elects the former, he can be said to act under a legal duress, then the distrust of the adequacy of the courts to protect and maintain the right is justified, and it is acknowledged that the perils of justice and right in the judicial tribunals are so great as to deprive one of his free volition, and shield him from responsibility. The law does not recognize its amenability to such a reproach. In consequence of the imperfection incident to all that is human, wrong may sometimes prevail in the purest and wisest judicial tribunals; yet, in theory, there is in our law a security for every right, and a redress for every wrong; and the practical operation of the law corresponds, in the main, with its profession. No one can be heard to say, that he had the right and the law with him, but he feared his adversary would carry him into court, and that he would be unlawfully fined and imprisoned; and that being thereby deprived of his free will, he yielded to the wrong, and the courts must assist him to a reclamation.

Again: Another reason why a recovery should not be had in such a case is, that it would enable one, by paying a claim about to be asserted by suit, to fix his own time, within the statute of limitations, for the litigation. He might prefer to pay off the claim, and take the chance of his adversary's losing his testimony within the period of limitation from the time of payment; thus affording him an opportunity to regain the sum paid, when peradventure it might be made to appear, under the facts then extant, that the payment was not required by the law.

Furthermore, if the principles contended for were allowed, it would injuriously affect the party to whom the payment was made. Regarding the money as his own, he might be induced to adopt a style of living, or to dispense benefactions, not justified by his fortune. So far has this been carried in Pennsylvania, that a recovery of

HARVARD
L405 SCHOOL
LIBRARY

taxes illegally assessed was denied, because the borough which received the payment had expended it in improvements.—Borough of Allentown v. Saeger, 20 Penn. State R. (9 Har.) 421. While we will not now endorse that case in its full extent, it illustrates the view which the courts take of the injustice involved in such suits; and it is the more appropriate here, because it was proved that most, if not all the money, had been expended by the corporation; and, it may be, in improvements, the benefits of which are shared by the plaintiff himself.

The authorities fully maintain the proposition, that the mere prospect of judicial proceedings, to enforce payment of a debt not legally due, does not make the payment compulsory. Where rent, not legally due, was paid in immediate prospect of a distress, the payment was held voluntary.—Knibbs v. Hall, 1 Esp. 84. So a payment of money made after action brought, with a declaration that it was without prejudice, and with intention to bring suit to recover it back, was held not compulsory.—Brown v. McKinally, 1 Esp. 279. In a Massachusetts case, involving the question under consideration, the following lucid statement of the principle, with the reason for it, was made: "It is an established rule of law, that if a party, with a full knowledge of the facts, voluntarily pays a demand unjustly made on him, and attempted to be enforced by legal proceedings, he cannot recover back the money, as paid by compulsion, unless there be fraud in the party enforcing the claim, and a knowledge that the claim is unjust. And the case is not altered by the fact, that the party so paying protests that he is not answerable, and gives a notice that he shall bring an action to recover the money back. *He has an opportunity in the first instance to contest the claim at law. He has, or may have, a day in court. He may plead and make proof that the claim on him is such as he is not bound to pay.*"—Benson v. Monroe, 7 Cush. 125. See, also, Preston v. Boston, 12 Pick. 13; Fleetwood v. City of N. Y., 2 Sandf. Sup. Ct. R. 475.

The supreme court of Ohio refused to sustain an action to recover money paid to procure a license in obedience to the exaction of a void ordinance of the city of Cincin-

nati, upon the ground that the payment was voluntary, notwithstanding the ordinance prescribed a fine as the penalty for its breach.—Mays v. City of Cincinnati, 1 Ohio St. R. 268. In the case of the Sandwich Glass Co. v. Boston, 4 Metc. 181, the doctrine is broadly stated, that a payment is voluntary, when made under a demand accompanied by no authority to enforce it except by suit at law. To the same effect are the decisions in . Clark v. Dutcher, 9 Cow. 674, and Sprague v. Birdsall, 2 Cow. 419. See, also, Silliman v. Wing, 7 Hill, 159 ; Abell v. Douglass, 4 Denio, 305. In Maryland, there were an act of the legislature and ordinances of the city of Baltimore, passed in pursuance to it, (all of which were unconstitutional,) requiring persons owning certain lands to build walls around them, so far as they were bounded by Jones' Falls ; and prescribing as a penalty for the failure to build such walls, that the city should have the same constructed, and issue warrants to the city collector for the collection of the costs of such construction from the owners of land so failing. An owner of land, under the constraint of these laws, built a wall, and sued to recover the cost from the city. The Maryland court of appeals held, that the action could not be maintained ; that money paid under a misapprehension of one's legal rights and obligations could not be reclaimed, and that a payment made under an apprehension, or even menace, of an impending distress warrant, would not render it compulsory.—Mayor of Baltimore v. Lefferman, 4 Gill, 425 ; see, also, Morris v. Mayor, &c., of Baltimore, 5 Gill, 244 ; Gordon v. Mayor of Baltimore, 5 Gill, 231 ; Smith v. Inhabitants of Readfield, 27 Maine, 145 ; Sheldon v. South School District, &c., 24 Cow. 88 ; Town of Barkhanstead v. Care, 5 Conn. 528 ; N. Y. & Harlem Railroad Co. v. Marsh, 2 Kernan, 308 ; Christy v. City of St. Louis, 20 Missouri, 143. Some of these cases go beyond the principles stated by us, and we do not now endorse them to their entire extent.

In South Carolina, a case kindred to this arose, in which an effort was made to recover back money, paid to procure a badge or license under a void ordinance of the city of Charleston ; and the court sustained the principle

which we have laid down.—Robinson v. City Council of Charleston, 2 Richardson, 317.

There are a large number of cases—several of which are to be found in our own reports—in which it is held, that money paid upon an execution, issued on a judgment afterwards reversed, may be recovered back.—Paulling v. Watson, 26 Ala. 205; Ewing v. Peck, 26 Ala. 414; Williams v. Simmons, 22 Ala. 425; Simmons v. Price, 18 Ala. 405; Dupuy v. Roebuck, 7 Ala. 484; Knox v. Abercrombie, 11 Ala. 997; Stewart v. Conner, 9 Ala. 803; Duncan v. Ware, 5 St. & P. 119; Judson v. Eslava, Minor, 71; Stevens v. Fitch, 11 Metc. 248. Besides, this court, by its expressions in several of the cases, and by its decision in Abercrombie v. Knox, *supra*, is committed to the proposition, that money paid upon an erroneous judgment, afterwards reversed, may be recovered; and we have no inclination to assert a contrary doctrine.

There is another class of cases, in which payments of taxes illegally exacted have been held involuntary; but, in all those cases, the tax collector had statutory authority to make a levy, or a warrrnt vesting him with such authority. Although the decisions are by no means uniform in maintaining that money paid under such circumstances may be reclaimed, yet this court has so decided, and we think the decision correct.—Wiley v. Parmer, 14 Ala. 627; Crutchfield v. Wood, 16 Ala. 702; Jayner v. Third Sch. Dist. in Egremon, 3 Cush. 567–572; Preston v. Boston, *supra;* Amesbury W. & C. Man. Co. v. Inhab. of Amesbury, 17 Mass. 461; Sheldon v. South Sch. Dist., *supra;* Town of Barkhanstead v. Case, *supra;* N. Y. & Har. R. R. Co. v. Marsh, *supra;* Christy v. City of St. Louis, *supra;* Smith v. In. of Readfield, *supra.*

These cases, in which money paid upon an erroneous judgment, or upon an execution issued upon such a judgment, or in discharge of a void assessment of taxes, was held recoverable, are distinguishable from this; because there was an apparent subsisting means of enforcing the illegal demand, without a resort to judicial proceedings, and without giving the party a day in court; and this is the distinction made in Benson v. Monroe, 7 Cush. 125.

It is also conceded, that a·payment is involuntary when made for the purpose of regaining one's liberty, or the possession of his property.—Maxwell v. Griswold, 10 How. 242–256; Elliot v. Swartwout, 10 Pet. 137–156; Allston v. Durant, 2 Strob. 257; Cadaval v. Collins, 4 Ad. & El. 858; Atlee v. Backhouse, 3 M. & W. 645; Oates v. Hudson, 5 L. & E. 469; Ripley v. Gelston, 9 Johns. 201; Clinton v. Strong, *ib.* 369; Chase v. Dwinal, 7 Greenleaf, 134. There is no element in the case before us, which brings it within this principle. Another principle, closely analogous to it, is, that if money be extorted as a condition upon which an officer will grant a license, the clearance of a vessel, or the like, when the party is legally entitled to it, the payment is involuntary.—Morgan v. Parmer, 2 B. & C. 733; Ripley v. Gelston, and Elliot v. Swartwout, *supra*. The plaintiff can not invoke that principle, because if it be conceded that he was entitled to have license issued from the corporation, the money was not extorted from him as the only agency by which he could obtain the license, but of his own volition he went forward and proposed the payment. He who received the payment was merely passive : he made no demand, no exaction. The distinction is between the cases where a party, acting from his own volition, makes a payment, upon the suggestion of his own mind that it is legal, to an officer who accepts it because he also deems it legal; and where a party demands that which is due to him from the officer, and the latter exacts the payment as the only condition upon which he can obtain that which is legally due from that officer. In the former case, the payment is voluntary; in the latter, involuntary. This distinction is taken and sustained in several of the cases above cited.—Robinson v. City of Charleston, 2 Richardson, 317; Sprague v. Birdsall, 2 Cow. 419; Maxwell v. Griswold, 10 How. 256; Elliot v. Swartwout, 10 Peters, 157; Atlee v. Backhouse, 3 M. & W. 632; Amesbury Woollen & Cotton Man. Co. v. Inhabitants of Amesbury, 17 Mass. 461.

Upon the last point above stated in this opinion my brethren express no opinion. They think there is no

necessity for deciding that point, and that the decision of the other points is conclusive as to whether the payment was voluntary. I think differently. I understand the plaintiff to plant himself upon the proposition that the payment was involuntary, for two reasons: 1st, because of the liability to fine and imprisonment in the event of his not paying; and, 2d, because the payment was made to procure a license to which he was entitled without such payment. In my opinion, we are not authorized to affirm that there was error in the overruling of the demurrer to evidence, unless we can decide both these propositions against the plaintiff.

The court is unanimous in the conclusion, that upon the facts, the plaintiff had no right of action whatever, and the court erred in adjudging the demurrer to evidence in his favor.

Judgment reversed, and cause remanded.