OCEANIC STEAM NAV. CO. (JONES v.). See Case No. 7,485.

OCEANIC STEAM NAV. CO. (LEVINSON v.). See Case No. 8,292.

## Case No. 10,405.

### OCEANIC STEAMSHIP CO. v. TAPPAN.

[16 Blatchf. 296; 25 Int. Rev. Rec. 177; 7 Reporter, 645.] [1]

Circuit Court, S. D. New York. May 6, 1879.

CONSTITUTIONAL LAW — PASSENGER TAX UNDER STATE LAW—PAYMENT UNDER PROTEST—RECOVERY BACK—ACT OF CONGRESS VALIDATING THE PAYMENTS.

1. T., as chamberlain of the city of New York, collected from a corporation moneys which it paid under protest, as a passenger tax, under acts of the legislature of the state of New York, which the supreme court of the United States held to be unconstitutional and void. Afterwards, congress passed an act (Act June 19, 1878, 20 Stat. 177), validating the collection of the moneys, and declaring that no action should lie to recover them back. The moneys paid were paid to relieve the corporation from an accumulation of penalties, the collection of which could be enforced only by judicial proceedings. In a suit by the corporation against the chamberlain, to recover back the moneys: *Held*, that the payments were voluntarily made and could not be recovered back, although paid under protest.

[Cited in Houston v. Feizer, 76 Tex. 365, 13 S. W. 268; Maxwell v. San Luis Obispo County, 71 Cal. 468, 12 Pac. 485.]

2. Whether such validating act of congress is valid, quere.

[3. Cited in Joannin v. Ogilvie, 49 Minn. 567, 52 N. W. 217, to the point that where the demandant is in a position to seize or detain the property of him against whom the claim is made, without a resort to judicial proceedings in which the validity of the claim may be contested, payment under protest, to recover or retain the property, will be considered as made under compulsion, and the money can be recovered back.]

[This was a proceeding by the Oceanic Steam Navigation Company against J. Nelson Tappan to recover taxes alleged to have been illegally exacted.]

Henry Nicoll, Ashbel Green, and James Emott, for plaintiff.

George P. Andrews, William C. Whitney, and Lewis Sanders, for defendant.

WALLACE, District Judge. This action is brought to recover moneys alleged to have been illegally exacted by the defendant, the chamberlain of the city of New York, and to whom the plaintiff paid the sum involved, under protest. The moneys were collected by the defendant under color of the provisions of acts of the legislature of the state of New

York, by which, in effect, a tax was imposed upon alien passengers arriving in vessels at the port of New York, to be collected of the master or owner of the ship by which they were landed. These acts, since the payment of the moneys in suit, have been declared unconstitutional by the supreme court of the United States, as in conflict with the clause of the constitution of the United States which delegates to congress the right to regulate commerce with foreign nations. Henderson v. Mayor of City of New York, 92 U. S. 259. Since the payment of the moneys, however, congress has passed an act (Act June 19, 1878, 20 Stat. 177), which declares that the acts of every state and municipal officer or corporation of the several states, in the collection of these moneys, shall be valid, and that no action shall be maintained against such officer or corporation, for the recovery of such moneys. The defence of the action is placed upon two grounds—first, that the moneys were paid voluntarily; and, second, that the validating act of congress precludes a recovery by the plaintiff.

An action does not lie to recover back moneys claimed without right, if the payment was made voluntarily, and with a full knowledge of the facts upon which the claim was predicated. It is not enough that payment was made under protest by the party paying. The payment must have been compulsory; that is, it must have been made under coercion, actual or legal, in order to authorize the party paying to recover it back. In the absence of such coercion, the person of whom the payment is demanded must refuse the demand; and he will not be permitted, with knowledge that the claim is illegal and unwarranted, to make payment without resistance, where resistance is lawful and possible, and afterwards to select his own time to bring an action for restoration, when, possibly, his adversary has lost the evidence to sustain the claim. Where, however, the demandant is in a position to seize or detain the property of him against whom the claim is made, without a resort to judicial proceedings, in which the validity of the claim may be contested, and payment is made under protest, to release the property from such seizure or detention, the party paying can recover back his payment.

The commutation moneys paid by the plaintiff were paid to relieve the plaintiff from an accumulation of penalties, the collection of which could only be enforced by judicial proceedings. The statute required the plaintiff, within twenty-four hours after the arrival of its vessel at the port of New York, to report in writing to the mayor of the city, the number, names, places of birth and last legal residence of each alien passenger, and, in case of failure, imposed a penalty of seventy-five dollars for each passenger not reported. The statute also directed the mayor, by an endorsement to be made on such report, to re-

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 25 Int. Rev. Rec. 177, and 7 Reporter, 645, contain only partial reports.]

quire the owner of the vessel to execute a several bond, with sureties, in a penalty of $300, for each passenger included in the report, to indemnify and save harmless the commissioners of emigration, and each and every city, town or county in the state, against all expenses which might necessarily be incurred for the care and support of such passenger. The statute also enacted, that such owner might commute for the bonds so required, within three days after the landing of such passengers, by paying to the chamberlain of the city of New York, the sum of one dollar and fifty cents for each and every passenger reported according to law, and that the receipt of such sum should be deemed a full and sufficient discharge from the requirements of giving bond. In case of neglect or refusal to give the bonds required, within twenty-four hours after landing passengers, the statute imposed a penalty upon the owner or consignee of the vessel, of five hundred dollars for each passenger landed.

The penalties given by the act were to be sued for and recovered by the commissioners of emigration, in any court having jurisdiction of such actions, and, under a general statute of the state respecting claims against vessels, such an action could be commenced by the seizure of the vessel by attachment, upon giving security to indemnify the owner. Briefly stated, the plaintiff's position was this—if it failed to report, it was liable to a penalty of seventy-five dollars for each alien passenger; if it did report, it was required to pay one dollar and fifty cents for each passenger, by way of commutation, or was liable, if required by the mayor, to give onerous bonds, and, in default, to pay a penalty of five hundred dollars for each bond withheld; and the penalties, in either case, were a lien upon the vessel, collectible by an action at law, wherein, upon giving security for the indemnity of the vessel owner, an attachment against the vessel might be obtained and the vessel seized.

Palpably, the statute was framed to coerce the payment of the commutation moneys. If they were not paid, the owner of the vessel was made liable to an accumulation of penalties, which would aggregate an enormous sum, and which, if collected, would ordinarily bankrupt the ship-owner. Naturally, rather than incur the hazard of such disastrous consequences, the ship-owner would pay, in preference to abiding the contingencies of litigation. The hardship of the particular case, however, cannot change the rule of law. The penalties imposed in lieu of the commutation money could only be collected by suit in a court of law, where the corporation against which they were claimed could have its day and all the protection which the courts afford to suitors; and a payment made under such a state of facts is not made under legal coercion. The party paying is bound to know the law and to assume that it will be correctly administered by the tribunal which is to decide the controversy. The rule is well stated in Benson v. Monroe, 7 Cush. 125, which was a case to recover head money, under a statute similar to the one here, and was precisely like the present case, except that attachments had been obtained, and the vessel seized under them, to recover the penalties. The plaintiffs thereupon paid the commutation money under protest, and brought suit to recover it back; and the court said: "They should have contested the demand made on them, in the suit that was instituted against them, and, having voluntarily adjusted that demand, and relieved their vessel from seizure, with a full knowledge, or means of knowledge, of all the facts of their case, they cannot now be permitted to disturb that adjustment."

It is stated, in general terms, in some of the decisions, that, where money is paid to a public officer, upon an unlawful demand, to save the person paying from the infliction, under color of authority, of great or irreparable injury, from which he can only be saved by making the payment, such payment is made under an urgent and immediate necessity and may be recovered back. But, it will be found that none of these decisions were in cases where the injury apprehended by the party paying could only be inflicted by the decision of a court in favor of the validity of the claim made against him. There cannot be an immediate and urgent necessity for the payment of a demand which can only be enforced by the decision of a court of justice. The case of Benson v. Monroe, and that of Cunningham v. Boston, 16 Gray, 468, are directly in point, as deciding, that the apprehension of the recovery of heavy penalties by suit, in case the demand for a small sum is not complied with, does not take the case out of the general rule.

The case of Cunningham v. Monroe, 15 Gray, 471, cited for the plaintiff, was one where the payment was made under circumstances amounting to duress de facto, which were emphasized, in the opinion of the court, as distinguishing it from Cunningham v. Boston. There are cases in the books, where payments have been extorted by threats of criminal or civil proceedings, and the party paying the demand has been permitted to recover back, but these were cases where the facts were held to constitute actual duress, of which the threats were an incident.

In reaching this conclusion I have not adverted to the fact, that the mayor never required the bonds to be executed by the plaintiff, by the endorsement upon the reports, which the statute directs. The moneys were paid by the plaintiff to escape the penalties imposed for neglect to execute the bonds, and not the penalties for failing to make the report required by the act. Until the mayor's endorsement these penalties could not accrue. The plaintiff, without waiting to ascertain

whether or not the mayor would take the action required to subject the plaintiff to the penalties, paid the commutation moneys, upon the assumption that the mayor would take such action at some future time. Within the recent decision of the supreme court of the United States in Railroad Co. v. Commissioners, 98 U. S. 541, this circumstance should defeat the plaintiff. That case holds, that, where a warrant was in the hands of an officer, for the collection of a tax, which authorized him to seize the property of the plaintiff, and no actual attempt to execute the warrant had been made, but the plaintiff, assuming that a seizure would be made, went to the treasurer and paid the tax under protest, setting forth in the protest the illegality of the tax, and stating that a suit would be brought to recover back the payment, the payment was not compulsory, in a legal sense, and could not, therefore, be recovered back.

I have preferred, however, to rest the decision, upon this branch of the case, upon the broad ground, that money paid upon a demand, to prevent the seizure of property which can only take place by judicial proceedings, where the party paying may have his day in court and defeat the proceeding, is not paid under legal compulsion, and cannot be recovered back, although paid under protest. Mayor & City Council of Baltimore v. Lefferman, 4 Gill, 425; Town Council of Cahaba v. Burnett, 34 Ala. 400; Cook v. City of Boston, 9 Allen, 393; Taylor v. Board of Health, 31 Pa. St. 73; Mays v. City of Cincinnati, 1 Ohio St. 268.

Having thus reached a conclusion which must dispose of this case adversely to the plaintiff, it is not necessary to pass upon the question presented by the defence, which rests on the effect of the act of congress declaring that the acts of the defendant in collecting the moneys in suit shall be valid, and declaring that no action shall be maintained to recover back the money. It would be indecorous to adjudge an act of congress unconstitutional, when it is not necessary to do so in the disposition of the controversy before the court. It is proper, however, to say, that, to sustain the validity of this act, it will be necessary to decide that it is within the authority of congress to legalize the action of officers of a state in collecting moneys under a law of the state, which, because it was unconstitutional, conferred no authority whatever to act under it; and I am not aware of any legislative validating act containing such a vigorous and radical measure of relief, which has been the subject of judicial exposition. Unless the act can be sustained as a validating act, it would seem that the clause which declares that no action shall be maintained to recover back the moneys collected. must be ineffectual, because it would deprive the plaintiff of a right of action, which is a vested right of property, without due process of law.

Judgment is ordered for the defendant.