112 So.2d 344

**BUSCH JEWELRY CO.**

v.

**CITY OF BESSEMER et al.**

6 Div. 274.

Supreme Court of Alabama.

May 21, 1959.

Meade Whitaker, J. Asa Rountree and Cabaniss & Johnston, Birmingham, and W. Gerald Stone and Huey, Stone & Patton, Bessemer, for appellant.

Ling & Bains, Bessemer, for appellees.

STAKELY, Justice.

The case at bar comes before this court on appeal by Busch Jewelry Company from the final decree dated February 7, 1958, of the circuit court, in equity.

This litigation involves an ordinance of the City of Bessemer (appellee) described as "An ordinance to provide for qualifications of applications of applicants for the privilege of examining eyes, prescribing or furnishing glasses, to regulate the practice of said profession, and to provide penalties for the violation thereof."

The amended bill of complaint was filed by appellant under the Declaratory Judgments Act (Code of 1940, Title 7, § 156 et seq.), against the City of Bessemer and seeks a construction of appellee's Ordinance No. 1112 and its several sections as applied to appellant and to any licensed optometrist employed by appellant to take charge of its optometric department, prays that the ordinance be declared invalid in its entirety and in the alternative that each of the several sections be declared invalid, and finally seeks injunctive relief against the city officials to restrain them from enforcing the ordinance against appellant and any optometrist so employed by it.

This proceeding is the second appeal to this court. By decree dated July 27, 1955, the court below sustained demurrers to all aspects of appellant's amended bill of complaint and purported to render a final decree. Appellant appealed from that decree and the cause was submitted on December 8, 1955. Upon the close of oral argument appellant filed with this court a motion for a temporary injunction pending the determination of its appeal. No action was taken by the court with re-

spect to appellant's motion for a temporary injunction but on October 31, 1957, the appeal was dismissed on the ground that the decree appealed from was void. The record on the former appeal did not show that "a copy of the proceeding" had been served on the Attorney General of Alabama pursuant to § 166, Title 7, Code of 1940, as construed by this court. Busch Jewelry Co. v. City of Bessemer, 266 Ala. 492, 98 So.2d 50.

After the rendition of this court's decision, appellant filed with the court below an acceptance of service by the Attorney General. By order dated December 31, 1957, the cause was reset for hearing on January 10, 1958, and notice thereof given by registered mail to the Attorney General. Further by letter dated January 6, 1958, the Attorney General acknowledged receipt of the notice of hearing and disclaimed any intention of participating in the case.

By decree rendered January 10, 1958, the court below sustained demurrers to that aspect of appellant's amended bill seeking injunctive relief, overruled demurrers to that aspect of the bill seeking a declaratory judgment and, by consent of the parties, granted permission for the filing of responsive pleadings and the taking of testimony on the same day. In its final decree rendered on February 7, 1958, the court below construed Ordinance No. 1112 of the City of Bessemer, holding that said ordinance is (i) within the police power of the City of Bessemer, (ii) is not inconsistent with or contrary to the laws of Alabama, (iii) is not unreasonable, and (iv) is valid in its entirety.

Most of the facts of the case at bar are undisputed and may be stated briefly. For many years appellant has operated a retail jewelry store in the City of Bessemer. Prior to 1955, as a part of its business, it operated an optometric department where optometrists duly licensed by the City Board of Optometry (or physicians) were employed by appellant for the purpose of examining eyes of members of the public, prescribing glasses as necessary and selling optical goods. Towards the rear of appellant's store and on one side an examination room was partitioned off and while the optometric department was being operated, the partitioned room was used by the optometrist for the examination of patients.

During the year 1954 and for many years prior thereto, the appellant had a license from the City of Bessemer which entitled it to sell, among other merchandise, optical goods including eyeglasses. On February 9, 1954, the City of Bessemer adopted Ordinance No. 1112, "an ordinance to provide for qualifications of applications of applicants for the privilege of examining eyes, prescribing or furnishing glasses, to regulate the practice of said profession, and to provide penalties for the violation thereof." When appellant applied for its city license for the year 1955, the city clerk declined to issue a license with respect to optical goods and informed appellant that the optometrist employed by it would have to apply for the license. When the optometrist employed by appellant, Hertzel B. Heiman, applied for such license the city clerk requested that Heiman sign an affidavit which contained the following:

"I am familiar with ordinance No. 1112 and in particular Section Three thereof and I certify that I have fully complied with all of the provisions of said Ordinance No. 1112 and do hereby make application for a license for the privilege of examining eyes, prescribing or furnishing glasses, in the City of Bessemer, Alabama."

Heiman was unable to execute the required affidavit because he could not swear that he was in compliance with all of the provisions of Ordinance No. 1112. This action followed.

Ordinance No. 1112 may be summarized as follows:

*Section 1* declares that the purpose of the ordinance is to "provide for the safety, preserve the health and to promote the prosperity, comfort and convenience" of the people of Bessemer and that "all persons engaged in the profession of examining eyes, and prescribing and furnishing glasses for the correction thereof" must comply with this ordinance.

*Section 2* states that no license will be issued to any applicant for the privilege of examining eyes, and prescribing and furnishing glasses until such applicant has met the requirements of the ordinance.

*Section 3* requires that an applicant for such license, in addition to being licensed and qualified under the laws of the State, must also "present satisfactory evidence to the City Clerk that he is qualified to examine eyes properly and prescribe and fit glasses correctly." This section also requires that the applicant comply with the provisions of subsections "A" through "I" summarized as follows: *3A* merely prescribed that any office where eyes are examined and glasses prescribed and fitted must be kept clean and sanitary; *3B* requires that the patients' entrance must open on a public street, hall, lobby or corridor and that the office have one or more windows of outside exposure; *3C* requires, in addition to certain minimum equipment, that every eye examination must be made in an office of the type referred to in Sections 3A and 3B and in a room thereof used exclusively for eye examinations; *3D* requires that no eye examination shall be made and no glasses fitted in any office or room occupied in whole or in part by any wholesale or retail mercantile establishment; *3E* and *3F* place stringent restrictions on the means and methods by which the applicant may advertise; *3G* prohibits an optometrist from examining eyes under any name except his own; *3H* requires the keeping of records of eye examinations and prescriptions; *3I* prohibits price advertising.

*Section 4* states that "the City Clerk shall have sixty days, after the applicant makes application to her for such license, to complete her investigation and if she shall certify to the Board of Commissioners her inability to determine said qualifications, the Board of Commissioners are hereby authorized to appoint a board consisting of three licensed optometrists where applicant is an optometrist; to appoint a board consisting of three licensed physicians where applicant is a physician, to examine into the qualifications of said applicant and the final ruling of either the clerk or, in the case of her failure to pass on the qualifications of applicant, then the decision of said board, shall be final. * *."

*Section 5* gives to the Board of Commissioners the power to revoke the license for the violation of any of the provisions of this ordinance.

*Section 6* makes it unlawful for a newspaper to publish any advertisement by any one proposing to render to the public the services covered by this ordinance until the license provided for has been finally granted.

*Section 7* makes the violation of any provision of this ordinance a misdemeanor and imposes a penalty.

*Section 8* contains the usual "saving clause".

*Section 9* repeals any other laws of Bessemer which might be in conflict with this ordinance.

In considering the factors involved in determining the validity of a municipal ordinance this court stated in the case of City Council of Montgomery v. West, 149 Ala. 311, 42 So. 1000, 9 L.R.A.,N.S., 659,

"In Smith on the Modern Law of Municipal Corporations, § 526, in defining conditions to be considered in determining the validity of an ordinance, it is laid down, that the ordinance 'must be impartial and general in its operation. So far as it restricts

the absolute dominion of the owner over his property, it should furnish a uniform rule of action, and its application cannot be left to the arbitrary will of the governing authorities.' * * Again, the same author in section 530, observes: 'Ordinances which invest a city council, or a board of trustees, or officers, with a discretion which is purely arbitrary, and which may be exercised in the interest of a favored few, are unreasonable and invalid.' "

■ As we have already stated, Section 3 of Ordinance No. 1112 requires among other things that an applicant for a license to practice optometry, in addition to being licensed by the State, must also "present satisfactory evidence to the City Clerk that he is qualified to examine eyes properly and prescribe and fit glasses correctly."

Nowhere in the ordinance is there any indication of what "satisfactory evidence" must be presented to the City Clerk. Evidently, according to the ordinance, being qualified and licensed under the laws of the state to practice optometry is not sufficient, but no further standards are set out by which uniform administration of the ordinance could be had. Section 4 of Ordinance No. 1112 provides that if the city clerk certifies to the Board of Commissioners her inability to determine an applicant's qualifications, then the Board of Commissioners are authorized to appoint a board consisting of three licensed optometrists to examine the qualifications of said applicant. It is further provided by Section 4 of said Ordinance that a decision by either the city clerk or the appointed board if the city clerk certifies her inability to determine an applicant's qualifications, will be final. There is nothing in Section 4 to indicate on what a decision as to an applicant's qualifications is to be based. Without any uniform standard set out to which all applicants for a license are required to conform, we must conclude that these sections of the ordinance invest the city clerk with a purely arbitrary discretion to refuse to issue licenses to applying optometrists. Under our decisions such an arbitrary discretion vested in a municipal official makes the ordinance vesting it invalid. City Council of Montgomery v. West, supra; State ex rel. Dally v. Woodall, 225 Ala. 178, 142 So. 838; Lee v. Renfro, 257 Ala. 679, 60 So.2d 849. We therefore conclude that the clause in Section 3 which states: "The applicant shall also present satisfactory evidence to the City Clerk that he is qualified to examine eyes properly and prescribe and fit glasses correctly," must be declared void. It then logically follows that Section 4, the only purpose of which is to provide for a board of optometrists to determine whether such "satisfactory evidence" of the applicant's qualifications has been presented when the city clerk certifies that she is unable to make such determination, is also void.

■ The appellant also insists that Ordinance No. 1112 or, in the alternative, Sections 3B, 3C, 3D, 3E, 3F, 3G and 3I separately and severally, are inconsistent with the law of Alabama and are therefore invalid.

There can be no question that a municipal ordinance which is inconsistent with the laws of the state is not valid. The Alabama Constitution of 1901, Section 89, provides:

"The legislature shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this state."

Title 37, § 455, Code of 1940, provides:

"Municipal corporations may, from time to time, adopt ordinances and resolutions *not inconsistent with the laws of the state*, to carry into effect or discharge the powers and duties conferred by this title, and provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and enforce obedience to such ordinances by fine not exceeding one hundred dol-

lars, and by imprisonment or hard labor not exceeding six months, one or both."—[Italics supplied.]

The Alabama statutes relating to the profession of optometry are found in Chapter 11 of Title 46, Code of 1940. Appellant insists that Ordinance No. 1112 conflicts with §§ 210 and 211 of Title 46 found in Chapter 11. These sections state:

"§ 210. * * * Nothing in this chapter shall be so construed as to prevent any person, firm, or corporation from owning or operating a store or business establishment wherein eyes are examined or glasses fitted; provided, that such store, establishment, or optometric department shall be in charge of a duly licensed optometrist, whose name must appear on and in all optometry advertising of whatsoever nature done by said person, firm or corporation.

"§ 211. * * * It shall be unlawful for any person, firm or corporation, engaged in the practice of optometry in this state, to print or cause to be printed, or circulate or cause to be circulated, or publish, by any means whatsoever, any advertisement or circular in which appears any untruthful, impossible, or improbable or misleading statement or statements, or any thing calculated or intended to mislead or deceive the public. And it shall be unlawful for any individual, firm or corporation, engaged in the sale of goods, wares or merchandise who maintains or operates, or who allows to be maintained and operated in connection with said mercantile business an optometry department; or who rents or sub-leases to any person or persons for the purpose of engaging in the practice of optometry therein, any portion of or space in said store, premises or establishment in which such person, firm or corporation is engaged in said mercantile business, to publish, or circulate, or print or cause to be printed, by any means whatso-

ever, any advertisement or notice of the optometry department maintained, operated, or conducted in said establishment or place of business, in which said advertisement or notice appear any untruthful, improbable, impossible, or misleading statement or statements, or anything calculated to mislead or deceive the public."

These two sections were construed by this court in the case of Alabama State Board of Optometry v. Busch Jewelry Company, 261 Ala. 479, 75 So.2d 121, 125. In that case the Alabama State Board of Optometry had inserted in its code of ethics a provision which purported to forbid advertising by optometrists except for limited advertising by new licensees or optometrists who changed locations. This court held in that case that such a provision is contrary to the grant of advertising rights under statutes pertaining to optometrical advertising and stated that:

"The clear and unmistakable legislative policy embraced in §§ 210 and 211, supra, is to permit, first, the operation of an optometric department as part of a general merchandizing business, provided such department is 'in charge of a duly licensed optometrist', and second, the advertising of such department, provided the name of the licensed optometrist is used in the advertising. To say, then, that a licensed optometrist may not advertise is to say, in effect, that the store owner may not advertise, for the store owner is expressly prohibited from advertising without using the licensed optometrist's name."

Sections 3E, 3F and 3I of Ordinance No. 1112 all deal with advertising by the optometrist. Sections 3E and 3F place stringent restrictions on the method by which an optometrist can advertise, e. g., size of lettering and shape or structure of signs, complete prohibition of displays of eyeglasses and frames and prohibition of other methods of advertising commonly

used throughout the state. Section 3I prohibits price advertising. By putting these restrictions on the manner by which an optometrist may advertise the ordinance in effect restricts the appellant's right to advertise its optometric department a right which this court held in the case of Alabama State Board of Optometry v. Busch Jewelry Company, supra, to have been granted by the legislature to mercantile establishments. We therefore conclude that Sections 3E, 3F and 3I of Ordinance No. 1112 are in conflict with the legislative policy of Alabama and hence are void.

■ Section 3G of the ordinance declares that no optometrist shall examine eyes and prescribe and fit glasses under any name other than his or her own proper name. The lower court held that a mercantile establishment could comply with this section "by using such optometrist (one who had met all of the other requirements of the ordinance) to examine eyes and prescribe and fit glasses under his proper name." We can not be certain exactly what Section 3G means or what the lower court interprets said section to mean, but it appears to us capable of only one of two interpretations: (1) it either prohibits an optometrist from practicing in the employ of any one else, e. g., a mercantile establishment, or (2) it prohibits an optometrist from allowing his name to be used by a mercantile establishment for advertising its optometrical department. Under either of these interpretations Section 3G would obviously be contrary to Title 46, § 210, supra, and would hence be void.

■ Section 3D states that "No applicant shall examine eyes and prescribe and fit glasses in any office or room occupied in whole or in part by a wholesale or retail mercantile establishment." This section is patently in conflict with Title 46, § 210, supra, which expressly allows a person, firm or corporation to own and operate a store or business establishment wherein eyes are examined or glasses are fitted, as long as the store, business, or optometric department is in charge of an optometrist licensed by the state. Hence Section 3D of Ordinance No. 1112 is invalid.

■ Section 3B requires that the patient's entrance to any optometric department must open on a public street, hall, lobby, or corridor, and that said office have one or more windows of outside exposure. We believe that this section also conflicts with Title 46, § 210, and is therefore void. In addition we are unable to see how such a regulation as this would "provide for the safety, preserve the health and * * * promote the prosperity, comfort and convenience" of the citizens of Bessemer, this being the purported purpose of Ordinance No. 1112.

We have carefully examined the remaining sections and subsections of the ordinance in question and find them not to be in conflict with the constitution or laws of the state and hence valid.

Section 8 of Ordinance No. 1112 states:

"Should any section, sub-section, clause, sentence, or other part of this ordinance be declared unconstitutional by any Court, the remaining sections, subdivisions, or parts of said ordinance shall not be affected thereby, but shall continue in full force and effect as though such section, subdivision, clause or part of said ordinance had not been declared unconstitutional."

Therefore with the exception of the clause of Section 3 already set out and discussed, Subsections 3B, 3D, 3E, 3F, 3I and Section 4, Ordinance No. 1112 is not invalid under the constitution and laws of the State of Alabama.

The final decree of the lower court, which found the ordinance here involved valid in its entirety, is due to be reversed. Part of Section 3, which part has been set out and discussed in this opinion, Subsections 3B, 3D, 3E, 3F and 3I, and Section

4 of the ordinance are hereby declared void. The remaining portion of Ordinance No. 1112 may be allowed to stand.

Affirmed in part and in part reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.