The defendants, the City of Birmingham and its director of finance, appeal from a $272,738 judgment in favor of the plaintiff, Piggly Wiggly Alabama Distributing Company, Inc., in an action by Piggly Wiggly Distributing to obtain a refund of its alleged overpayment of licensing fees to the City of Birmingham in 1987 and 1988. The issues are: (1) Whether the notice-of-claim and statute of limitations periods of Tit. 62, § 658, Code of Alabama 1940 (Recompiled 1958), and § 3-2-1, the General Code of City of Birmingham, Alabama 1980, are enforceable against Piggly Wiggly Distributing, and (2) Whether, in the circumstances of this case, Piggly Wiggly Distributing's payment of license fees to Birmingham in 1987 and 1988 constituted an "illegal tax assessment" under §40-10-164, Ala. Code 1975.
Piggly Wiggly Distributing, an Alabama corporation, is a wholesale grocery cooperative,[1] which operates several warehouses and has its principal place of business in Birmingham. During the years relevant to this case, Piggly Wiggly Distributing operated two warehouses, one consisting of 218,000 square feet of dry goods storage and 17,500 square feet of cold storage and another consisting of 64,000 square feet for storage of perishable goods.
The License Code of the City of Birmingham provides a schedule of licenses and fees for various categories of businesses, vocations, occupations, and professions. Until 1989, Piggly Wiggly Distributing paid fees for a license under Schedule 165. Schedule 165 provides:
 "165 — Merchandise Retail, Wholesale or Otherwise — General —
 "(Not to include any business for which license is specifically required by other Schedule of this Code). Each person engaged in the business of offering for sale, taking or soliciting orders for sale, or selling merchandise of any description, including any such products stored in a warehouse for sale, distribution or delivery, whether as owner, dealer, agent, or co-signee, shall pay a license as follows:
 "Where gross receipts, less returned goods, for the year next preceding, were
"(a) $30,000 or less . . . . . . . . . . $30.00
 "(b) Where gross receipts as above defined exceed $30,000, the annual License Fee shall be 1/10 of 1% of all gross receipts."
Schedule 165, therefore, applies generally to any person engaged in the business of selling or offering to sell merchandise of any description, unless another schedule specifically applies.
In 1986 and 1987, Piggly Wiggly Distributing filed business license returns under Schedule 165, remitting fees, respectively, in the amounts of $125,494 and $130,308. In February 1988, Piggly Wiggly Distributing filed another return under Schedule 165 and remitted $144,296 in fees. In September 1988, however, Piggly Wiggly Distributing sent a letter requesting a refund, stating that in 1986, 1987, and 1988 it had overpaid for its licenses and that it was entitled to a refund of $397,298, i.e., the difference between the $400,098 it had paid and the $2,800 it said it had owed. Piggly Wiggly Distributing stated that in each of these years it had erroneously filed its business license returns under Schedule 165, instead of Schedules 249 and 250.
Schedules 249 and 250 apply to persons engaged in the business of warehousing. Schedule 249 provides:
 "249 — Warehouse, Including Cotton and Furniture —
 "(a) Each person engaged in warehousing other than cold storage warehousing, shall pay a license as follows: Where total floor space in said warehouse is 20,000 square feet or less . . . . . . . . $90.00
 "(b) An additional license of 3/10 of one cent per square foot shall be paid for any footage in excess of 20,000 square feet. *Page 761 
 "(c) This Subsection 249 and Subsection 250 below shall be the sole applicable and governing provisions of the License Code of the City of Birmingham under which licenses are required and license fees are imposed for a cooperative grocers association which maintains a warehouse whether cold storage or otherwise, for the purpose of distributing groceries to member retail grocery stores."
Schedule 250 is identical except that it applies to persons engaged in "cold storage warehousing" and that it imposes a fee of $60 when the total space of the warehouse is less than 100,000 cubic feet, with an additional $60 for each additional 100,000 cubic feet. By their own language, Schedules 249 and 250 are the only schedules of the License Code applicable to a "cooperative grocers association." According to Piggly Wiggly Distributing, if it had filed its returns for these years under Schedules 249 and 250, the total amount of fees it would have paid would have been $2,800, not $400,098.
The City of Birmingham refused to give Piggly Wiggly Distributing a refund, and in January 1989 Piggly Wiggly Distributing filed this action, alleging that, because of a mistake of law or fact, it had been erroneously classified under Schedule 165, instead of Schedules 249 and 250, and that, because of this mistake, it was entitled to a refund of $397,298 in excess fees paid in 1986, 1987, and 1988. The City of Birmingham filed a motion to dismiss, alleging that Piggly Wiggly Distributing was not entitled to prosecute its refund action because it had failed to comply with the six-month notice-of-claim provision of Tit. 62, § 658, Code of Alabama 1940 (Recompiled 1958) and § 3-2-1, General Code of the City of Birmingham, Alabama 1980. Piggly Wiggly Distributing subsequently amended its complaint to allege that the 12-month limitations period of Tit. 62, § 658, violated its right to equal protection and due process under the Alabama Constitution of 1901 and the Fourteenth Amendment to the United States Constitution and that it violated §§ 104 and 105 of the Alabama Constitution of 1901, on the ground that it was a local law regulating a subject already provided for by general law.[2]
The circuit court denied the City of Birmingham's motion to dismiss, and the City of Birmingham filed an answer. The City of Birmingham and Piggly Wiggly Distributing subsequently filed cross motions for a summary judgment. After receiving evidence and hearing arguments of counsel, the circuit court granted, in part, Piggly Wiggly Distributing's motion for a summary judgment, holding that the notice-of-claim and limitations provisions of Tit. 62, § 658, and § 3-2-1 were unenforceable to the extent that the City of Birmingham could not limit to less than two years the time in which a taxpayer may commence an action for a refund under § 40-10-164. In its order, the circuit court stated, in pertinent part:
 "[Section 658, Ala. Code 1940 (Recompiled 1958),] which is incorporated into Section 3-2-1 of the General Code of the City of Birmingham of 1980, as amended, requires that notice of claims for tax or license fee payments made under mistake of law or fact be given to the City of Birmingham within six months after payment is made and that proceedings to recover such funds be commenced within twelve months of such payment. Alabama Code Sections 40-10-164 to -166 (1975) give all other persons in Alabama two years within which to file for tax refunds and Section 11-47-23, Code 1975, provides that claims of this nature against municipalities must be presented within two years. Thus, whereas individuals have two years to file for tax refunds against all other municipalities and governmental entities in the state, they must give notice within six months in Birmingham and file their proceedings within twelve months.
 "In Opinion of Justices No. 102, 252 Ala. 527, 41 So.2d 775 (1949), the Alabama Supreme Court stated: *Page 762 
 " 'While the due process and equal protection guarantees are not coterminous in their spheres of protection, equality of right is fundamental in both. Each forbids class legislation arbitrarily discriminatory against some and favoring others in like circumstances. . . . It is essential that the classification itself be reasonable and not arbitrary, and be based upon material and substantial distinctions and differences reasonably related to the subject matter of the legislation or considerations of policy, and that there be uniformity within the class.' "
Applying § 40-10-164, the circuit court held that Piggly Wiggly Distributing was entitled to present evidence in support of its claims for license fees it said had been illegally assessed in 1987 and 1988. Although the circuit court granted Piggly Wiggly's motion for a summary judgment as to the enforceability of Tit. 62, § 658, and § 3-2-1, it denied the City of Birmingham's motion to certify the order as a final judgment pursuant to Rule 54(b), Ala.R.Civ.P.
After a nonjury trial, at which the court heard ore tenus
evidence, the circuit court entered a $272,738 judgment in favor of Piggly Wiggly, stating, in pertinent part:
 "Based upon the evidence presented, the Court makes the following conclusions of law and findings of fact:
 "1. The plaintiff is a cooperative within the meaning of Sections 249 and 250 of the License Code of the City of Birmingham ('License Code').
 "2. The payment of license fees by the Plaintiff for the years 1987 and 1988, under and pursuant to Section 165 of the License Code was paid by mistake of law or fact.
 "3. The Plaintiff is entitled to a refund pursuant to Sections 40-10-164 to 40-10-166, Alabama Code 1975, and Section 3-2-1, Code of General Ordinances of the City of Birmingham (1980).
 "4. In 1987, the Plaintiff paid ONE HUNDRED THIRTY THOUSAND THREE HUNDRED EIGHT AND 68/100 DOLLARS ($130,308.68). In 1988, the Plaintiff paid ONE HUNDRED FORTY FOUR THOUSAND TWO HUNDRED NINETY SIX AND 48/100 DOLLARS ($144,296.48) making the total for these two years TWO HUNDRED SEVENTY FOUR THOUSAND SIX HUNDRED FIVE AND 16/100 DOLLARS ($274,605.16). The plaintiff actually should have paid only ONE THOUSAND EIGHT HUNDRED SIXTY SIX AND 72/100 DOLLARS ($1,866.72). Thus, the Plaintiff is entitled to recover TWO HUNDRED SEVENTY TWO THOUSAND SEVEN HUNDRED THIRTY EIGHT AND 44/100 DOLLARS ($272,738.44)."
This case concerns the validity and meaning of three state statutes: Tit. 62, § 658, Alabama Code 1940 (Recompiled 1958), and §§ 40-10-164 and 40-10-166, Alabama Code 1975.
Title 62, § 658, provides:
 "Claims for money paid under mistake. — All payments of money made to the city or any officer or board thereof under mistake of law or fact upon any irregular or illegal tax assessment, or any ordinance or resolution or any assessment for public improvements or for any such purpose whatever, shall only be recoverable if proceedings for such recovery shall be commenced within twelve months after such payment was made and after written claim filed within six months from the time such payment was made. Provided this shall not be construed to prohibit the governing body of such city from voluntarily paying such claim within two years from the time such money was so erroneously collected, provided, if in the opinion of such governing body, the city has available funds which are not otherwise necessary to the proper administration of such city."
Tit. 62, § 658, has its origin in 1915 Ala. Acts, No. 257, which by its terms applied only to cities with a population of 100,000 — i.e., the City of Birmingham. Section 11 of Act No. 257 had a three-month notice-of-claim provision and a one-year limitations period, within which a taxpayer could commence a refund action against the city. This provision was later adopted as amended by the Alabama Code of 1940 under Title 62, which was composed of laws applying to less than the whole state. Tit. 62, § 1, Ala. Code 1940; Tit. 62, *Page 763 
§ 658, Ala. Code 1940. The article in which § 658 was included applied exclusively to the City of Birmingham. As adopted by the 1940 Code, § 658 retained the one-year limitations period, but extended from three to six months the period within which a taxpayer could submit to the City of Birmingham written notice of a refund claim.
At some time, this provision was incorporated into the City of Birmingham Code,[3] and it is now codified at § 3-2-1 of the General Code of the City of Birmingham, Alabama 1980, as amended. Section 3-2-1 states:
 "All payments of money made to the city or any officer or board thereof under mistake of law or fact upon any irregular or illegal tax assessment, or any ordinance or resolution, or any assessment for public improvements or for any such purpose whatever shall only be recoverable if proceedings for the recovery shall be commenced within 12 months after the payment was made and after written claim is filed within six (6) months from the time the payment was made. . . ."
Section 40-10-164, Ala. Code 1975, provides:
 "In case of the payment of money under mistake of law or fact upon any illegal tax assessment made under color of any law, special or general, of the state, or by any of its political subdivisions, authorizing the assessment or collection of taxes for any purpose whatever, whether for any municipality, for the payment of the creditors of any municipality, for schools, or otherwise, except the law relating to taxes to be paid to the state or to the general funds of the counties, respectively, the same shall be recoverable by appropriate proceedings against the proper parties or their successors, with the usual rights of appeal, and that such payment was not made under compulsion or protest shall be immaterial."
Section 40-10-166, Ala. Code 1975, provides:
 "The provisions of Sections 40-10-164 and 40-10-165 shall apply to all persons and corporations who are justly and equitably entitled to have money erroneously paid for taxes refunded, such payment having been made within two years preceding the commencement of any action, suit, or proceedings for its recovery, and no action, suit, or other procedure can be maintained unless brought or commenced within two years after such payment is made."
Sections 40-10-164 and -166 have their origin in 1907 Ala. Acts, No. 698, §§ 1 and 3. As codified in the 1907 and 1923 Codes, these provisions were almost identical to their present form, with the exception that the statute of limitations period was six years, instead of two. §§ 2345 and 2347, Ala. Code 1907; §§ 3144 and 3146, Ala. Code 1923. The statute, as codified in the 1923 Code, was amended by 1931 Ala. Acts, No. 673, to provide for a one-year, instead of a six-year, statute of limitations period. It was later adopted and codified virtually without change by the 1940 and 1975 Codes with a two-year limitations period. Tit. 51, §§ 333 and 334, Ala. Code 1940 (Recompiled 1958); §§ 40-10-164 and 40-10-166, Ala. Code 1975.
The first issue is whether the notice of claim and statute of limitations provisions of Tit. 62, § 658, Code of Alabama 1940 (Recompiled 1958), are unconstitutional and, therefore, unenforceable against Piggly Wiggly Distributing.
Although the circuit court did not specifically declare the notice-of-claim and limitations provisions of Tit. 62, § 658, unconstitutional, we can only conclude from the language of its order denying summary judgment that equal protection was the basis of its decision. Therefore, because equal protection appears to have been the basis for the circuit court's decision not to enforce the notice-of-claim and statute of limitations provisions of Tit. 62, § 658, and because we agree that these provisions of the statute violate Piggly Wiggly Distributing's right to equal protection of the laws under the Fourteenth *Page 764 
Amendment to the United States Constitution, we address only those arguments directed to the equal protection issue.
The City of Birmingham argues that the six-month notice-of-claim and statute of limitations provisions of Tit. 62, § 658, violate none of the equal protection and due process guarantees of either the United States or the Alabama Constitution. More specifically, the City of Birmingham contends that equal protection requires only that those "similarly situated" be treated equally under the law and that because all the members of the class to which these laws apply, i.e., persons with claims against Birmingham, are treated the same, there is no violation of equal protection.
In Crandall v. City of Birmingham, 442 So.2d 77 (Ala. 1983), the Court stated the applicable constitutional test:
 ' " 'The Fourteenth Amendment does not prohibit legislation merely because it is special or limited in its application to a particular geographical or political subdivision of the state.' Fort Smith Light Co. v. Paving Dist., 274 U.S. 387, 391 [47 S.Ct. 595, 597, 71 L.Ed. 1112] (1927). Rather the Equal Protection Clause is offended only if the statute's classification 'rests on grounds wholly irrelevant to the achievement of the State's objective.' McGowan v. Maryland, 366 U.S. 420, 425 [81 S.Ct. 1101, 1104, 6 L.Ed.2d 393] (1961); Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552, 556 [67 S.Ct. 910, 912, 91 L.Ed. 1093] (1947)." '
Id. at 78 (quoting Holt Civic Club v. City of Tuscaloosa,439 U.S. 60, 70-71, 99 S.Ct. 383, 390, 58 L.Ed.2d 292 (1978).
We begin our discussion by noting that this Court has held unconstitutional two other local laws that, like Tit. 62, § 658, originated in 1915 Alabama Acts, No. 257. Crandall v. Cityof Birmingham, 442 So.2d at 78-80 (Title 62, § 659, Code of Alabama 1940 (Recompiled 1958)); Peddycoart v. City ofBirmingham, 354 So.2d 808 (Ala. 1978) (Title 62, § 660, Code of Alabama 1940 (Recompiled 1958)).
Most relevant to the instant case is this Court's decision inCrandall v. City of Birmingham, supra, where it held that Tit. 62, § 659, Code of Alabama 1940 (Recompiled 1958), violated the equal protection clause of the Fourteenth Amendment and Art. IV, § 105, of the Alabama Constitution of 1901. Like § 658, § 659 was a local law applicable only to Birmingham, providing that in order to file a personal injury action against the city, a plaintiff had to have filed a written notice of the claim within 90 days after the date of the injury. Section11-47-23, Alabama Code 1975, which applied to all other Alabama municipalities, provided six months within which to submit a written notice of a personal injury claim. The Crandall Court held, in part, that Tit. 62, § 659, violated the equal protection clause, because the Court could discern no set of facts justifying the distinction between the notice-of-claim period applicable to Birmingham and the general one applicable to all other municipalities in Alabama.[4]
On the issue of equal protection, we find Crandall almost indistinguishable from this case. Both Crandall and this case involve notice-of-claim and statute of limitations periods applicable only to Birmingham, which require persons with claims against the City of Birmingham to file a written notice of a claim and give them less time to commence a refund action against the City of Birmingham than that afforded to similarly situated persons with claims against other Alabama municipalities. As in Crandall, the legislative distinction in this case between those with claims against Birmingham and those with claims against municipalities in Alabama bears no relationship to any alleged legitimate purpose of the statute. In fact, the City of Birmingham makes no real attempt to argue that there is one. Its sole argument is that Tit. 62, § 658, does not violate the equal protection provisions because all persons with claims against Birmingham are treated in the same way. The relevant legislative classification or distinction, however, is between persons with claims against Birmingham and persons with claims *Page 765 
against other municipalities in Alabama, not between different classes of persons with claims against Birmingham. Because we see no reason why persons bringing refund actions against Birmingham should be subject to a six-month notice-of-claim requirement and a one-year statute of limitations, while persons with claims against any other municipality in Alabama need only file an action within two years after payment of the taxes, we hold that Tit. 62, § 658, violates the equal protection clause of the Fourteenth Amendment to the United States Constitution.
Because Tit. 62, § 658, is unconstitutional and because the relevant provisions of § 3-2-1, General Code of the City of Birmingham, are inconsistent with those of § 40-10-166, seeBusch Jewelry Co. v. City of Bessemer, 269 Ala. 180,112 So.2d 344 (1959), the circuit court properly held that the notice-of-claim and the statute of limitations periods of Tit. 62, § 658, and § 3-2-1 were not enforceable against Piggly Wiggly Distributing.
The second issue is whether Piggly Wiggly Distributing's payment of license fees was an "illegal tax assessment" under § 40-10-164. The City of Birmingham argues that Piggly Wiggly Distributing's voluntary, but mistaken, payment of license fees in 1987 and 1988 under Schedule 165 was neither the result of an "assessment" of tax nor "illegal" within the meaning of §40-10-164.
The City of Birmingham contends that no "assessment" of license fees took place because Piggly Wiggly Distributingvoluntarily filed a tax return and paid the license fees that it now seeks to have refunded. We think the language of §40-10-164 belies the City of Birmingham's argument. The City wants to say that because the process or procedure under which Piggly Wiggly Distributing paid its license fees was not coercive or compulsory, there was no "assessment" and that, therefore, Piggly Wiggly Distributing was not entitled to a refund of a portion of the license fees it voluntarily paid in 1987 and 1988. Section 40-10-164, however, unequivocally states that the fact that a payment of tax "was not made under compulsion or protest shall be immaterial" to a taxpayer's right to a refund.[5] From this language, we conclude that under §40-10-164 a taxpayer has a right to obtain a refund of an illegally assessed license tax from a municipality, even though the payment was voluntary.
The City of Birmingham also argues that Piggly Wiggly Distributing presented no evidence that the assessment was "illegal." In its brief, the City of Birmingham seems to argue that only those tax assessments based on void statutes are "illegal." Again, the language of § 40-10-164 does not support the City of Birmingham's narrow construction of the statute. "Illegal" is defined generally as "[a]gainst or not authorized by law." Black's Law Dictionary 747 (6th ed. 1990). Nothing in § 40-10-164 leads this Court to believe that the legislature intended anything other than the ordinary meaning of this word. The License Code of the City of Birmingham authorizes the payment of license fees under the general provision of Schedule 165 unless the licensee is a "business for which license is specifically required by other Schedule of this Code." Because Schedules 249 and 250 provide that they are "the sole applicable and governing provisions of the License Code of the City of Birmingham under which licenses are required and license fees are imposed for a cooperative grocers association," the payment of license fees by Piggly Wiggly Distributing under Schedule 165 was unauthorized, and, therefore, "illegal" under § 40-10-164. *Page 766 
We hold, therefore, that under the facts before us, Piggly Wiggly Distributing's payment of license fees under Schedule 165 was an "illegal tax assessment" under § 40-10-164.
Because the notice-of-claim and statute of limitations periods of Tit. 62, § 658, Alabama Code 1940 (Recompiled 1958), and § 3-2-1, Birmingham City Code, are not enforceable against Piggly Wiggly Distributing and because, in the circumstances of this case, Piggly Wiggly Distributing's license fee payments in 1987 and 1988 were an "illegal tax assessment" under §40-10-164, we affirm.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] According to Bobby Martin, controller of Piggly Wiggly Distributing, a "cooperative" corporation is one owned by its customers. All earnings and profits in excess of a fixed amount are distributed to its shareholder-customers pro rata based on the amount of goods purchased from the cooperative. Piggly Wiggly Distributing's shareholder-customers are Piggly Wiggly retail grocery operators in Alabama, Tennessee, Georgia, Mississippi, Florida, and North Carolina.
[2] Piggly Wiggly Distributing amended its complaint again, alleging that, in compliance with § 6-6-227, Ala. Code 1975, Piggly Wiggly Distributing had provided notice to the State of its constitutional challenges to Tit. 62, § 658, by serving it with a copy of its complaint. The State later filed a document waiving any right to appear and be heard on the issue of the constitutionality of Tit. 62, § 658.
[3] See, e.g., § 1771, Code of City of Birmingham Alabama 1917 (containing three-month notice-of-claim period and one-year limitations period of § 11, 1915 Ala. Acts, No. 257); § 1200, General City Code of Birmingham 1944 (containing six-month notice-of-claim period and one-year limitations period of Tit. 62, § 658, Ala. Code 1940).
[4] The Court also held that Tit. 62, § 659, violated Art. IV, § 105, because it was a local law enacted at variance with an already existing general law on the same subject.
[5] This language is in derogation of the common law, which allowed no right to recover illegally paid tax from a municipality in an action of assumpsit unless the payment had been made involuntarily or under compulsion. Town Council ofCahaba v. Burnett, 34 Ala. 400 (1859) (action against municipality); Raisler v. Mayor Counsel [sic, Council] ofAthens, 66 Ala. 194, 198 (1880) (action against municipality); see National Bank of Boaz v. Marshall County, 229 Ala. 369,370, 157 So. 444, 445-46 (1934) (holding that tax paid to county fell within exception to § 3144, Alabama Code 1923, and that, therefore, taxpayer had to show payment was involuntary).
The Court in Town Council of Cahaba v. Burnett,34 Ala. at 402 stated the rule: "It is the law of this State, that where money has been voluntarily paid, through mistake or ignorance of law, with a full knowledge of the facts, and without fraud or imposition, it can not be reclaimed, either at law or in equity."