The facts of this tax case are virtually undisputed. In the period prior to 2002, several officials at the HealthSouth Corporation ("HealthSouth") were involved in a scheme to artificially inflate the company's reported earnings. In furtherance of this *Page 739 
scheme, HealthSouth overstated its fixed assets by recording fictitious items of personal property in the fixed-asset books of many of its facilities, including the corporate headquarters located in Jefferson County. Consequently, when HealthSouth completed its personal-property tax returns for the 2001-2003 tax years and submitted them to Dan Weinrib, the Jefferson County tax assessor ("the tax assessor"), it intentionally listed numerous fictitious items of personal property and assigned fabricated values to those items.[1] The fabricated values of those fictitious items of personal property were assessed to HealthSouth by the tax assessor, which resulted in an increase in the amount of ad valorem taxes on personal property owed and paid by HealthSouth.
HealthSouth amended its 2003 tax returns to remove the fictitious assets. This amendment reduced the assessment and resulting tax owed by HealthSouth, and the tax assessor allowed an adjustment to the amount of taxes owed by HealthSouth, pursuant to § 40-7-9.1, Ala. Code 1975. Testimony indicated that the tax assessor allowed this adjustment because the taxes had not yet been paid.[2]
HealthSouth then amended its 2001 and 2002 personal-property tax returns and filed petitions for a refund of the portion of ad valorem taxes it claims it overpaid as a result of listing the fictitious items of personal property on its tax returns for those years. HealthSouth alleged in those petitions that it was due a refund pursuant to § 40-10-160, Ala. Code 1975, because those taxes were paid by mistake or error. J.T. Smallwood, the Jefferson County tax collector ("the tax collector"), requested an opinion from the attorney general on the matter, and the attorney general determined that no refund was due because, in the attorney general's opinion, Health-South had made no mistake or error that would trigger the refund statute. The tax collector denied the petitions for refunds of taxes paid for the 2001 and 2002 tax years based on that opinion from the attorney general. HealthSouth then filed this action in the probate court and, after an ore tenus hearing, the probate court denied HealthSouth's refund petitions. Health-South timely appealed to this court.
Although HealthSouth raises numerous issues on appeal, those issues can be summarized as follows: (1) whether Health-south is entitled to a refund of ad valorem taxes paid for the 2001 and 2002 tax years pursuant to § 40-10-160, Ala. Code 1975, because the terms "mistake," "error," and/or "other error" in the statute encompass intentional misrepresentations; (2) whether the assessment of ad valorem taxes on the fictitious items HealthSouth intentionally listed on its tax returns in furtherance of a fraudulent scheme to inflate earnings amounted to an illegal assessment; and (3) whether HealthSouth is entitled to a refund of the taxes paid for the 2001 and 2002 tax years because the tax assessor allowed an adjustment of the taxes paid for 2003, which were part of the same fraudulent scheme, pursuant to § 40-7-9.1, Ala. Code 1975.
 Standard of Review
Because the relevant facts of this case are undisputed and this court is presented with issues regarding the correct *Page 740 
application of the law to those undisputed facts, the standard of review is de novo, and no presumption of correctness is accorded to the trial court's judgment. SeeEx parte Graham, 702 So.2d 1215 (Ala. 1997); RobertsHealth Care, Inc. v. State Health Planning Dev.Agency, 698 So.2d 106 (Ala. 1997); State Dep't ofRevenue v. Garner, 812 So.2d 380, 382 (Ala.Civ.App. 2001); and State Dep't of Revenue v. Taft Coal Sales Assocs., Inc., 801 So.2d 838, 839 (Ala.Civ.App. 2001).
 Analysis I.
HealthSouth first contends that, pursuant to § 40-10-160, Ala. Code 1975, it is entitled to a tax refund for the portion of the personal-property ad valorem taxes it claims it overpaid for the 2001 and 2002 tax years as a result of intentionally listing fictitious items of personal property on its tax returns along with fabricated values for those items because, it claims, the use of the words "mistake," "error," and "other error" in that statute indicate that the legislature intended "mistake" and "error" to have different meanings. HealthSouth asserts that the word "error" is broader in meaning than the word "mistake" and that an "error" includes intentional misrepresentations.
Section 40-10-160, Ala. Code 1975, explains when a taxpayer is entitled to recover a refund of taxes paid by mistake or error; it states:
 "Any taxpayer who through any mistake, or by reason of any double assessment, or by any error in the assessment or collection of taxes, or other error, has paid taxes that were not due upon the property of such taxpayer shall be entitled, upon making proof of such payment to the satisfaction of the Comptroller, to have such taxes refunded to him if application shall be made therefor, as hereinafter provided, within two years from the date of such payment."
In Bean Dredging, L.L.C v. Alabama Department ofRevenue, 855 So.2d 513 (Ala. 2003), the Alabama Supreme Court stated the following regarding statutory construction:
 "It is this Court's responsibility to give effect to the legislative intent whenever that intent is manifested. State v. Union Tank Car Co., 281 Ala. 246, 248, 201 So.2d 402, 403 (1967). When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute. Ex parte Jackson, 614 So.2d 405, 406-07 (Ala. 1993). Additionally, when a term is not defined in a statute, the commonly accepted definition of the term should be applied. Republic Steel Corp. v. Horn, 268 Ala. 279, 281, 105 So.2d 446, 447 (1958). Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says. Ex parte Shelby County Health Care Auth., 850 So.2d 332 (Ala. 2002)."
855 So.2d at 517.
In DeKalb County LP Gas Co. v. Suburban Gas, Inc.,729 So.2d 270, 276 (Ala. 1998), the Supreme Court stated:
 "It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no ration, al way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of *Page 741 
course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala. 1997)."
The pertinent language of the Code section in question is: "Any taxpayer who through any mistake, . . . or by anyerror in the assessment or collection of taxes, orother error, has paid taxes that were not due upon the property of such taxpayer. . . ." Nothing in § 40-10-160, Ala. Code 1975, leads us to believe that the legislature intended anything other than the plain meaning of those words. We do not find the language to be ambiguous, and because the legislature failed to define the words "mistake" and "error," we must give those words their common, everyday meaning. The term "mistake" is defined as "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention." Merriam-Webster's Collegiate Dictionary
795 (11th ed. 2003). The term "error" is defined as "an act involving an unintentional deviation from truth or accuracy."Merriam-Webster's Collegiate Dictionary 425 (11th ed. 2003). Although HealthSouth may be correct that the plain meaning of the word "mistake" is slightly different from the plain meaning of the word "error," we are clear to the conclusion that an intentional misrepresentation is not included in the plain meaning of either word.
Furthermore, we are persuaded by the attorney general's opinion. The Alabama Supreme Court has recognized that an attorney general's opinion, although not binding, can be persuasive authority. See Anderson v. Fayette County Bd.of Educ., 738 So.2d 854, 858 (Ala. 1999), andAlabama-Tennessee Natural Gas Co. v. Southern Natural GasCo., 694 So.2d 1344, 1346 (Ala. 1997) (citing Poe v.Grove Hill Mem'l Hosp. Bd., 441 So.2d 861, 863 (Ala. 1983)).
The attorney general issued an opinion concluding that § 40-10-160, Ala. Code 1975, does not allow a refund of taxes when the taxpayer has made an intentional misrepresentation to the taxing authority. The attorney general's opinion stated:
 "Section 40-10-160 of the Code of Alabama must be construed in light of the common law that preceded it. The common-law rule regarding a refund of taxes voluntarily paid has been stated as follows:
 "`[A] party may not recover taxes or charges voluntarily made unless such recovery is authorized by statute. . . .
 "`Generally, if a taxpayer pays an illegal tax, with knowledge of facts sufficient to frame a protest, and if the payments were not made under duress or compulsion, the payment is deemed to be voluntary and cannot be recovered.'
 "72 Am.Jur.2d State and Local Taxation
§ 979 (2004). Accord, e.g., Town Council of Cahaba v. Burnett, 34 Ala. 400 (1859).
 "This Office has recognized that, contrary to the common-law rule, there shall not be read into section 40-10-160 of the Code a provision requiring compulsion or protest. Opinion to Honorable Derrell R. Hann, Judge, Probate Court, Talladega County, dated February 21, 1990, A.G. No. 90-00164, citing Graves v. McDonough, 264 Ala. 407, 88 So.2d 371 (1956). Taxes may, therefore, be refunded under section 40-10-160, even though they are voluntarily paid. C.f. City of Birmingham v. Piggly Wiggly Ala. Distrib. Co., 638 So.2d 759 (Ala. 1994) (considering a refund of municipal taxes under section 40-10-164 of the Code of Alabama, which expressly exempts compulsion or protest). *Page 742 
 "The intentional misrepresentation of the value of property by the taxpayer for property tax purposes does not constitute a mistake of law or fact by the taxpayer. There were neither double assessments nor any errors in the assessment or collection of the taxes made by the taxing officials.
 "To conclude that a refund is due in every case in which taxes were paid in an incorrect amount simply because the taxes were paid voluntarily and without protest would apply the refund rule out of context. The history of the rule indicates that a refund was never intended to be available where the tax paid was incorrect because of intentional misrepresentations by the taxpayer for personal gain. At common law, a refund was warranted if it was involuntarily paid under protest. A taxpayer cannot, however, be expected to protest a result the taxpayer wanted. Graves does not indicate that this aspect of the rule changed when the rule was codified and the protest requirement was eliminated. Therefore, the taxpayer is entitled to a refund where the taxpayer gives inaccurate information resulting in the illegal tax only if that information was mistakenly or inadvertently given. C.f. A.G. No. 90-00164."
Op. Att'y Gen. No. 2005-096 (March 30, 2005). The attorney general has issued numerous opinions regarding this statute, none of which: approved a refund under facts similar to those in this case. In addition, the attorney general stated that "all of the opinions of this Office approving a refund under the statute have done so solely for mistake or inadvertent error." Id.
The probate court did not err in its judgment denying HealthSouth relief under § 40-10-160, Ala. Code 1975. We cannot conclude that the legislature intended § 40-10-160, Ala. Code 1975, to allow a refund of taxes paid on fictitious items intentionally listed on a tax return in furtherance of a fraudulent scheme to inflate earnings.
 II.
HealthSouth next contends that it is entitled to a refund of the taxes it paid on the fictitious assets it intentionally listed on its tax returns because, it claims, the assessment of taxes on those nonexistent items of personal property was void and illegal under Alabama law.
HealthSouth relies heavily on City of Birmingham v. PigglyWiggly Alabama Distributing Co., 638 So.2d 759 (Ala. 1994), to support the contention that taxes assessed on the fictitious items of personal property are void and illegal under Alabama law.[3] Although Piggly Wiggly does set out the definition of an illegal assessment, the facts of that case are distinguishable from the facts in this case. In PigglyWiggly, Piggly Wiggly Alabama Distributing Co. ("Piggly Wiggly Distributing") mistakenly filed its business-license returns under Schedule 165 of the License Code of the City of Birmingham and paid $400,098 in fees. However, if *Page 743 
Piggly Wiggly Distributing had filed under the correct schedules, Schedules 249 and 250 of the License Code, it would have paid only $2,800 in fees. Piggly Wiggly Distributing sought a refund from the City of Birmingham, asserting thatbecause of a mistake of law or fact, it had beenerroneously classified under Schedule 165. The City refused to issue a refund, and Piggly Wiggly Distributing sued for and was awarded a refund. In affirming the circuit court's judgment, the Alabama Supreme Court noted that the word "illegal" had been "defined generally as `[a]gainst or not authorized by law,'" that "[n]othing in § 40-10-164 [led] th[at] Court to believe that the Legislature intended anything other than the ordinary meaning of th[at] word," and that "under § 40-10-164 a tax-payer has a right to obtain a refund of an illegally assessed license tax from a municipality, even though the payment was voluntary."638 So.2d at 765 (quoting Black's Law Dictionary 747 (6th ed. 1990)). The Alabama Supreme Court concluded that the payment of the license fee by Piggly Wiggly Distributing under Schedule 165 was unauthorized and, therefore, illegal because Schedules 249 and 250 provided that they were the sole applicable and governing provisions of the License Code for a cooperative-grocers association, such as Piggly Wiggly Distributing. The fees that Piggly Wiggly Distributing sought to have refunded were paid as a result of unauthorized assessments. It is clear that the basis of the Court's ruling in Piggly Wiggly was based on a bona fide mistake, where Piggly Wiggly Distributing mistakenly paid fees under the wrong schedule in the License Code, and not anintentionally false tax return.
Furthermore, this case differs from Piggly Wiggly in that in this case the tax assessor was authorized to assess taxes on the assets HealthSouth listed on its tax returns. The Code establishes the procedure for assessing and collecting taxes on personal property and sets out the duties and responsibilities of the tax-payer and the tax assessor. Section 40-7-1(a), Ala. Code 1975, provides that "[t]he tax assessor . . . in each of the several counties shall have the right and authority to assess . . . all personal property to the party last assessing the same, or to the owner of record. . . ." Section 40-7-20, Ala. Code 1975, requires a taxpayer to submit tax returns that include a "full, true, and distinctstatement of all . . . personal property" (emphasis added), and § 40-7-14 requires a taxpayer to provide the "estimated value of every item of personal property listed." Section 40-7-21(a), Ala. Code 1975, provides that
 "[i]t shall be a Class C misdemeanor for any taxpayer, or attorney or agent of any taxpayer having authority to make tax returns, to fail, neglect, or refuse on demand of the tax assessor, county revenue commissioner, or other assessing official, to fill out or have filled out the schedule or list herein provided for, or to fail to give the information herein provided for, or to fail, refuse, or neglect, to take and subscribe to the oath or affirmation required to such schedules or fail to return the same to the assessing official as prescribed by law."
Section 40-7-27, Ala. Code 1975, provides that
 "[w]hen the assessor shall have completed his work of assessing, valuing, and equalizing property which has been listed for taxation in his county, and such valuation shall have been entered on the assessments lists, . . . he shall certify over his signature to the correctness of his returns, showing valuations fixed by him, and he shall at once notify the Department of Revenue by certified or registered mail that he has completed his assessment, valuation, and equalization *Page 744 
work and that the tax returns are ready for the review and inspection as provided for in this title."
Section 40-7-34, Ala. Code 1975, provides that "[a]fter the book of assessments has been completed as provided in this title, the Department of Revenue or the agent or assistant thereof shall certify on the book of assessments that the same has been examined and corrected by him," specifying the total amount of several types of taxes and that "such certificate is to be the warrant to the tax collector of the county to proceed to collect such taxes in the manner directed by law."
HealthSouth had a duty to provide the tax assessor with tax returns that included a full, true, and distinct statement of all the personal property it owned along with an estimated value of every item. The legislature, made the failure to conform with this duty a class C misdemeanor for a reason. The heightened importance stems from the fact that the tax assessor depends on the taxpayer to provide a true and accurate list of property from which the tax assessor affixes values for assessment purposes. The tax assessor wasauthorized to assess the taxes based on the lists provided by HealthSouth. See §§ 40-7-1, 40-7-27, and40-7-34, Ala. Code 1975. HealthSouth's violation of its duty to provide correct and truthful information on its tax returns did not abrogate the tax assessor's authority to affix values for assessment purposes to the property listed on HealthSouth's tax returns.
Moreover, in Alamo National Bank of San Antonio v.Commissioner of Internal Revenue, 95 F.2d 622, 623 (5th Cir. 1938), the United States Court of Appeals for the Fifth Circuit stated:
 "Taxation is a matter of statutes, and equitable considerations cannot override the provisions of the statutes, nor always supply their omissions. McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. [46 (1937)]. Nevertheless honesty, good faith, and consistency are due in tax accounting. The right and wrong of things and equitable principles have a place in tax matters. Stearns Co. v. United States, 291 U.S. 54, 54 S. Ct. 325, 78 L.Ed. 647
[(1934)]; Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 [(1937)]."
95 F.2d at 622-23.[4] Alabama courts have also indicated that equitable principles have a place in tax matters. See Simsv. White, 522 So.2d 239, 240 (Ala. 1988), Grant v.State, 667 So.2d 1369, 1372 (Ala.Civ.App. 1994), andTown of Camp Hill v. James, 686 So.2d 1208, 1211
(Ala.Civ.App. 1996).
HealthSouth cannot intentionally provide the tax assessor with misleading information in furtherance of a fraudulent scheme, allow the tax assessor to depend on this information in making the assessment, let the assessment stand while it benefits from the fraudulent scheme, and then change its position and request a refund of the taxes when the fraud is discovered and is no longer profitable. See Henderson v. Simmons,234 Ala. 329, 332, 174 So. 491, 492 (1937) (stating that "one who has assessed property for taxation, and permits the assessment to stand, is estopped from denying liability for the taxes then assessed").
 III.
HealthSouth finally contends that, pursuant to § 40-7-9.1, Ala. Code 1975, it is entitled to a refund of the taxes paid for the 2001 and 2002 tax years because; it *Page 745 
argues, the tax assessor allowed an adjustment of the taxes paid for 2003 that were part of the same fraudulent scheme. Specifically, HealthSouth argues that the tax assessor should not be allowed to engage in this type of disparate treatment.
As stated above, HealthSouth's 2001, 2002, and 2003 tax returns included fictitious assets along with fabricated values for those assets. The tax assessor provided HealthSouth with an adjustment with respect to HealthSouth's 2003 assessment. After HealthSouth requested a refund of taxes paid for the 2001 and 2002 tax years, the tax assessor requested an opinion from the attorney general on the matter, and the attorney general determined that HealthSouth was not entitled to a refund. Based on that opinion, the tax assessor denied HealthSouth's refund petitions for the 2001 and 2002 tax years.
In essence, HealthSouth requested the probate court to invoke its equity jurisdiction to grant the refund petitions. A party seeking equitable relief, however, must have acted with equity and must come into court with clean hands. Levine v.Levine, 262 Ala. 491, 494, 80 So.2d 235, 237 (1955). InJ M Bail Bonding Co. v. Hayes, 748 So.2d 198
(Ala. 1999), the Alabama Supreme Court stated:
 "The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights `contrary to equity and good conscience.' Draughon v. General Fin. Credit Corp., 362 So.2d 880, 884 (Ala. 1978). The application of the clean hands doctrine is a matter within the sound discretion of the trial court. Lowe v. Lowe, 466 So.2d 969 (Ala.Civ.App. 1985)."
748 So.2d at 199. HealthSouth cannot be permitted to take advantage of its own wrong by receiving a refund based on its own inequitable conduct. There is no equity in allowing HealthSouth to obtain relief from its own fraudulent scheme.
 Conclusion
We agree with the probate court that the relief sought by HealthSouth is not authorized under state law. The tax system cannot be used as a tool to further a fraudulent scheme for private personal gain.
Based on the above, we affirm the judgment of the probate court.
AFFIRMED.
THOMPSON and MURDOCK, JJ., concur.
PITTMAN and BRYAN, JJ., concur in the result, without writing.
[1] The tax returns were signed by an agent of HealthSouth and contained the following oath: "I hereby affirm that to the best of my knowledge and belief this listing including any accompanying statements, schedules, and other information is true and complete."
[2] HealthSouth assumes for purposes of this appeal that the reduction in the amount of the taxes owed for 2003 was an adjustment and not a refund.
[3] HealthSouth also relies on Harlan v. UnitedStates, 160 Ct.Cl. 209, 312 F.2d 402 (1963), a case from the United States Court of Claims; however, that case is distinguishable. In Harlan, the receiver for an Indiana corporate taxpayer filed claims for a refund of the taxes the receiver claimed the corporate taxpayer had overpaid in 1949 and 1950 on the theory that the corporate taxpayer had overstated its income and had overpaid its taxes to permit former management to retain control of the corporation. The court allowed that receiver to utilize any loss in 1950 as a carryback to 1.949 to increase recovery for that year. Rules of Court of Claims, Rule 38(c), 28 U.S.C. Harlan did not concern a refund of ad valorem property taxes based on mistake or error of law or an illegal assessment.
[4] In Bonner v. City of Prichard, 661 F.2d 1206,1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals entered before October 1, 1981.