THOMPSON, Presiding Judge.
 

 Grover Dunn, as assistant tax collector of Jefferson County, and Andrew Bennett, as assistant tax assessor of Jefferson County (collectively, “the taxing authorities”), appeal from the judgment of the Jefferson Probate Court awarding a refund to Sequa Corporation (“Sequa”) of certain ad valorem taxes Sequa had paid. For the reasons set forth herein, we affirm that judgment.
 

 The facts are largely undisputed. On May 19, 2005, Sequa applied to the Industrial Development Board of the City of Hueytown (“the IDB”) for an abatement of certain taxes, including ad valorem taxes, pursuant to the Tax Incentive Reform Act of 1992, § 40-9B-1 et seq., Ala.Code 1975 (“TIRA”).
 
 [1]
 
 On May 31, 2005, Sequa and the IDB entered into a tax-abatement agreement pursuant to which Sequa was granted an abatement from liability for noneducational property taxes, construction-related transaction taxes, and mortgage and recording taxes. The IDB notified the Jefferson County Commission and the Alabama Department of Revenue of its approval of Sequa’s tax-abatement request. In a letter to Sequa dated July 1, 2005, the Department of Revenue wrote, in part:
 

 “For property tax purposes, the abatement between [Sequa] and [the IDB] provides that [Sequa] shall be allowed an abatement of property taxes not required to be used for educational purposes or for capital improvements for education for the maximum of 10 years as specified in the abatement agreement.
 

 “Pursuant to Section 40-7-4,
 
 Code of Alabama 1975,
 
 all personal property such as furniture, fixtures, machinery, and/or equipment that has attained situs in the State of Alabama as of October 1, and all real property (land and/or buildings) that has been acquired must be reported and assessed, between October 1 and December 31, with the [Alabama] County assessing official. Additionally, any abatement on such real and/or per
 
 *461
 
 sonal property that has been granted should also be claimed between October 1 and December 31, with the AL County assessing official.
 

 “Therefore, to ensure that [Sequa] receives the proper credit due, a copy of any and all abatement agreements in addition to the listing of all abated property should be provided to the county assessing official. Not providing this information to the county assessing official may delay [Sequa]’s credit for the abated taxes.”
 

 It is undisputed that Sequa did not immediately notify the Jefferson County tax assessor of the tax exemptions to which it was entitled under the tax-abatement agreement. Moreover, in its personal-property ad valorem tax returns for 2007 and 2008 that it filed with the Jefferson County Tax Assessor, Sequa did not reference the tax-abatement agreement or respond affirmatively when asked in the returns whether it claimed that any of its property was exempt from taxation. In its 2009 personal-property ad valorem tax return, Sequa referenced its exemption from sales and use taxes, but it did not reference its exemption from ad valorem taxes. On December 27, 2007, and on December 17, 2008, Sequa paid real- and personal-property ad valorem taxes to the assistant tax collector on four parcels based on a millage rate that did not take into account the tax exemptions to which Sequa was entitled by virtue of the tax-abatement agreement.
 

 On December 18, 2009, Sequa filed a petition for a refund of ad valorem taxes with the Jefferson Probate Court pursuant to § 40-10-160, Ala.Code 1975. That section provides:
 

 “Any taxpayer who through any mistake, or by reason of any double assessment, or by any error in the assessment or collection of taxes, or other error, has paid taxes that were not due upon the property of such taxpayer shall be entitled, upon making proof of such payment to the satisfaction of the Comptroller, to have such taxes refunded to him if application shall be made therefor, as hereinafter provided, within two years from the date of such payment.”
 

 In its petition, Sequa contended that it had overpaid its 2007 and 2008 ad valorem taxes because of mistake or error. In particular, it asserted that the tax bills that had been issued to it for those years had failed to take into consideration the tax-abatement agreement and, as a result, that it had been charged at a higher tax rate than was applicable.
 

 On December 31, 2009, Sequa again paid real- and personal-property ad valorem taxes to the assistant tax collector based on a millage rate that did not take into account the tax-abatement agreement. Thereafter, Sequa amended its petition for a refund of taxes to reflect that additional tax payment.
 

 On February 2, 2010, the taxing authorities filed a response to Sequa’s petition in which they denied that Sequa was entitled to the refund of ad valorem taxes that it sought. They argued that Sequa had not notified the tax assessor of its exemption from ad valorem taxes until November 2009 and, as a result, that Sequa had lost the benefit of that exemption for the prior tax years. They also argued that Sequa’s failure to inform the tax assessor of its entitlement to tax exemptions did not constitute a “mistake” or “error” for which it could obtain a refund under § 40-10-160.
 

 On March 8, 2010, and June 25, 2010, the probate court held a bench trial at which it received ore tenus and documentary evidence. Following the trial, the probate court entered a judgment in which it found, among other things, that Sequa had “complied with the requirements of
 
 *462
 
 TIRA for the abatement of noneducational ad valorem taxes” and that its “failure to note or claim the abatement on the personal property tax returns for the 2007, 2008, and 2009 tax years was an inadvertent error which resulted in overpayments of ad valorem taxes for the years at issue.” Thus, the probate court concluded, Sequa was entitled, under § 40-10-160, to a refund of its overpayments of ad valorem taxes for those years. The taxing authorities appealed the probate court’s judgment to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 Because this appeal presents questions of law that are based on largely undisputed facts, our review is de novo.
 
 See Ex parte Soleyn,
 
 33 So.3d 584, 587 (Ala.2009) (“[I]t is well established that where the issues involve only the application of law to undisputed facts appellate review is de novo.”). The taxing authorities argue that the trial court erred in its interpretation of § 40-10-160 because, they say, the terms “mistake” and “error” as used in that statute do not include a taxpayer’s failure to claim an exemption on its tax returns. Relying on §§ 40-7-4 and -6, Ala.Code 1975, they argue that, to claim a property-tax exemption, a taxpayer is required to notify the tax assessor that the property is entitled to an exemption and that, when a taxpayer fails to notify the tax assessor of any exemption to which it is entitled as required by those statutes, the taxpayer is not entitled to an exemption. They point out that notification by the taxpayer is the only means by which a tax assessor can learn of a tax abatement.
 

 Section 40-7-4 requires that a taxpayer “render to the [tax] assessor under oath a full and complete list of all property of which he was owner, or in which he had any interest whatever,” on an annual basis. Section 40-7-6 provides, in relevant part:
 

 “All property claimed exempt from taxation under the provisions of this title shall be listed with the tax assessor by the taxpayer and entered on his return showing the items of property sought to be exempted, and no property omitted from said return shall be exempted.”
 

 The effect of these statutes is that, if a taxpayer wants to claim the benefit of a property-tax exemption, the taxpayer must list that exemption with the tax assessor. As the attorney general has opined, “[t]he assessing officer’s duty as to claims of exemption does not include an affirmative search of all the property in his jurisdiction to seek out and apply exemptions.” Op. Att’y Gen. No. 2002-280 (July 2, 2002).
 

 Despite the disallowance in § 40-7-6 of an exemption that a taxpayer has failed to claim, § 40-10-160, as previously noted, provides that a taxpayer is entitled, upon the filing of an appropriate application and subject to a limitations period of two years, to a refund of taxes paid “that were not due upon the property of such taxpayer” if the payment was made “through any mistake, ... or by any error in the assessment or collection of taxes, or other error.”
 

 In the present case, it is undisputed that Sequa did not comply with § 40-7-6 with regard to the ad valorem tax exemption provided by the tax-abatement agreement because it failed to list with the tax assessor any tax exemptions resulting from the tax-abatement agreement. The question presented by this appeal is whether Sequa’s inadvertent failure to claim on its tax returns the tax exemptions provided by the tax-abatement agreement or otherwise to notify the tax assessor of the exemptions provided by that agreement causes it to lose the benefit of the tax-abatement agreement to which it was otherwise entitled during 2007, 2008, and
 
 *463
 
 2009 or whether § 40-10-160 provides Se-qua relief from its failure to claim the exemptions provided by the tax-abatement agreement.
 

 Regarding statutory construction, our supreme court has written:
 

 “It is this Court’s responsibility to give effect to the legislative intent whenever that intent is manifested.
 
 State v. Union Tank Car Co.,
 
 281 Ala. 246, 248, 201 So.2d 402, 403 (1967). When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute.
 
 Ex parte Jackson,
 
 614 So.2d 405, 406-07 (Ala.1993). Additionally, when a term is not defined in a statute, the commonly accepted definition of the term should be applied.
 
 Republic Steel Corp. v. Horn,
 
 268 Ala. 279, 281, 105 So.2d 446, 447 (1958). Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says.
 
 Ex parte Shelby County [Health
 
 ]
 
 Care Auth.,
 
 850 So.2d 332 (Ala.2002).”
 

 Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 855 So.2d 513, 517 (Ala.2003). Furthermore, “statutes concerning the same subject matter are to be read
 
 in pari materia
 
 and should be construed together to ascertain the meaning of each.”
 
 Jefferson County v. Weinrib,
 
 36 So.3d 508, 511-12 (Ala.2009).
 

 It is apparent from the plain language of § 40-10-160 that the legislature intended to provide a taxpayer relief when an error or mistake results in the taxpayer’s payment of taxes that were not due and that, but for the error or mistake, would not have been paid. Reading that section
 
 in pari materia
 
 with § 40-7-6, we conclude that § 40-10-160 constitutes an exception to the general rule that a taxpayer who has failed to list its property as exempt with the tax assessor is not entitled to an exemption as to that property. Thus, if the reason the property was not listed with the tax assessor was because of a mistake or error, the taxpayer is entitled, upon the filing of a proper application under § 40-10-160, to obtain a refund for taxes paid on the exempt property during the two years preceding the filing of the application. Such a reading gives both statutes a field of operation and gives full effect to what we believe was the intention of the legislature in enacting a mechanism by which a taxpayer can obtain a refund for taxes mistakenly or erroneously paid.
 

 Our conclusion in this regard is in accord with advice the attorney general of Alabama has provided previously to tax officials. In Op. Att’y Gen. No. 2002-280, the attorney general was asked whether a taxpayer can obtain a refund pursuant to § 40-10-160 when the taxpayer had failed to claim an exemption in a prior tax return. In 'response, after quoting § 40-10-160 and § 40-7-6, the attorney general wrote:
 

 “The assessing officer’s duty as to claims of exemption does not include an affirmative search of all the property in his jurisdiction to seek out and apply exemptions. If an exemption is claimed, he should verify the facts upon which the claim of exemption is based to satisfy himself of the validity of the claim. The property owner/taxpayer has the responsibility to make a claim of exemption in accordance with the law if he expects to be granted the benefit of the exemption.
 
 See State v. Ross Grady Ins. Agency, Inc.,
 
 [48 Ala.App. 578,] 266 So.2d 787 ([Civ.App.] 1972). If, however, a taxpayer is entitled to an exemption, but paid the taxes because, by mis
 
 *464
 
 take, the taxpayer failed to claim the exemption, the taxpayer is entitled to a refund pursuant to [§] 40-10-160 of the Code of Alabama.”
 

 Op. Att’y Gen. No. 2002-280.
 
 See also
 
 Op. Att’y Gen. No. 2003-26 (Nov. 6, 2002). Although we are not bound by an opinion of the attorney general, we note that “an attorney general’s opinion ... can be persuasive authority.”
 
 HealthSouth Corp. v. Jefferson County Tax Assessor,
 
 978 So.2d 737, 741 (Ala.Civ.App.2006),
 
 aff'd,
 
 978 So.2d 745 (Ala.2007).
 

 The taxing authorities rely on
 
 Jones v. Johnson,
 
 240 Ala. 357, 199 So. 539 (1941), but we find that case distinguishable from the present case. In
 
 Jones,
 
 our supreme court wrote that “the law requires the taxpayer in his return from year to year to list the homestead separately thus disclosing the lands claimed as exempt from State ad valorem taxes, and in the absence of such claim in the return or by supplementary return, the exemption is lost.” 240 Ala. at 360, 199 So. at 542. However, the only question to which that holding was directed was whether, “[t]o obtain the benefit of the exemption of the homestead from State ad valorem taxes, ... the taxpayer, in his return, [must] disclose the realty constituting the homestead, or otherwise make claim to his tax exemption thereon.” 240 Ala. at 359, 199 So. at 541. There was no issue raised in that case as to whether a taxpayer who mistakenly fails to claim that certain of its property is exempt from taxation is thereafter permitted to obtain a refund of taxes paid based on § 40-10-160. In effect, the
 
 Jones
 
 court merely restated the general rule we noted above, i.e., that a taxpayer who has failed to list its property as exempt with the tax assessor is not entitled to an exemption as to that property.
 

 In
 
 State v. Ross Grady Insurance Agency, Inc.,
 
 48 Ala.App. 578, 266 So.2d 787 (Civ.App.1972), the other case on which the taxing authorities rely, an insurance agency sought a refund of domestic-corporation share taxes it had paid on the basis that, because it qualified as a financial institution, it was entitled to an exemption from those taxes. 48 Ala.App. at 580, 266 So.2d at 788-89. On appeal from a judgment awarding the agency the refund it had sought, this court reversed, holding that the statute providing for the exemption required the taxpayer to have paid excise taxes and to have filed excise-tax returns to be entitled to the exemption. 48 Ala.App. at 582-85, 266 So.2d at 792-94. Because the agency had not done so, this court concluded that the agency had not been entitled to the exemption it claimed and, therefore, that it was not entitled to the refund it sought. 48 Ala.App. at 585, 266 So.2d at 794. Unlike the taxpayer in
 
 Ross Grady,
 
 in the present case Sequa fully qualified for the exemptions at issue; it simply failed to inform the tax assessor of those exemptions or note those exemptions on its tax returns. Thus,
 
 Ross Grady
 
 has no application to the present case.
 

 The taxing authorities next contend that Sequa’s failure to notify the tax assessor of the exemptions to which it was entitled by virtue of the tax-abatement agreement does not constitute a “mistake” or “error” under § 40-10-160. We disagree.
 

 Construing § 40-10-160 and, in particular, discussing the meaning of the terms “mistakes” and “error” as used in that statute, this court has written:
 

 “The pertinent language of [§ 40-10-160] is: ‘Any taxpayer who
 
 through any mistake,
 
 ...
 
 or by any error
 
 in the assessment or collection of taxes,
 
 or other error,
 
 has paid taxes that were not due upon the property of such taxpayer-’ Nothing in § 40-10-160, Ala. Code 1975, leads us to believe that the
 
 *465
 
 legislature intended anything other than the plain meaning of those words. We do not find the language to be ambiguous, and because the legislature failed to define the words ‘mistake’ and ‘error,’ we must give those words their common, everyday meaning. The term ‘mistake’ is defined as ‘a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention.’
 
 Merriam-Webster’s Collegiate Dictionary
 
 795 (11th ed.2003). The term ‘error’ is defined as ‘an act involving an unintentional deviation from truth or accuracy.’ Merri
 
 am-Webster’s Collegiate Dictionary
 
 425 (11th ed. 2003).”
 

 HealthSouth Corp. v. Jefferson County Tax Assessor,
 
 978 So.2d at 741.
 

 Although, in the present case, it is undisputed that Sequa received a letter from the Department of Revenue indicating that it was required to claim the ad valorem tax exemption with the tax assessor, nothing in the record indicates that Sequa intentionally chose to reject the tax exemptions to which it was entitled by virtue of the tax-abatement agreement or that it received some benefit by failing to list its property as exempt such that an inference of such intent could arise. In fact, the probate court found that Sequa’s failure to claim its abatement on its personal-property tax returns was inadvertent, and the taxing authorities have not challenged that finding on appeal by showing that the evidence of record did not support that finding.
 

 We find that, under the facts of this case, Sequa’s failure to claim the ad valo-rem tax exemptions, under § 40-7-6, to which it was entitled and for which it subsequently sought a refund constituted a “mistake” or “error” as this court defined those terms for purposes of § 40-10-160 in
 
 HealthSouth Corp.
 
 As a result, we conclude that the probate court’s judgment providing for the refund of ad valorem taxes for which Sequa had petitioned is due to be affirmed.
 

 AFFIRMED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Our supreme court has described TIRA as follows:
 

 "TIRA is intended to promote industrial growth in Alabama by permitting municipalities, counties, and [public industrial authorities] to abate municipal, county, and state noneducational ad valorem taxes, construction-related ‘transaction’ taxes, mortgage taxes, and recording taxes for a 'maximum exemption period’ of 10 years when such taxes would otherwise be levied or collected 'with respect to private use industrial property.' §§ 40-9B-4 and -5, Ala. Code 1975. TIRA requires the abatements to ‘be embodied in an agreement' which must set forth the estimated amount of the abatement, ‘the maximum exemption period,’ and the '[g]ood-faith projections by the private user of: the amount to be invested!,] the number of individuals to be employed, initially and in the succeeding three years),] and the payroll.' § 40-9B-6(b)(l) and (2).”
 

 Dobbs v. Shelby County Econ. & Indus. Dev. Auth.,
 
 749 So.2d 425, 428 (Ala.1999).